## Young *et al. versus* Herdic *et al.*

1. An owner of timber land erected temporary buildings for lumbering purposes, on part of an adjoining tract, supposed by him to be within his lines, and after finishing lumbering, abandoned the buildings, having cut logs on the adjoining tract. *Held*, that the owner of the latter could maintain replevin for the logs.

2. The legal title to uncultivated lands draws to it the possession, which is deemed actual for all purposes of remedy, until interrupted by an actual entry and adverse possession by another.

3. Nothing short of an actual possession permanently continued will take away from the owner the possession which the law attaches to the legal title.

4. Actual possession to create ouster and toll the possession does not consist in temporary acts on the land without an intention to seat and occupy it for residence and cultivation or other permanent use consistent with the nature of the property.

5. Trover or replevin will lie by the owner in actual possession or having the presumptive possession of an owner of the legal title of wild land, for timber cut on the land.

March 29th 1867. Before THOMPSON, STRONG and AGNEW, JJ. READ, J., at Nisi Prius. WOODWARD, C. J., absent.

Error to the Court of Common Pleas of *Lycoming county*.

This was an action of replevin, brought April 23d 1864, by Peter Herdic and others, doing business under the name of Herdic, Lentz & Whites, against William R. Young and others, doing business under the name of Young, Finley & Co., for 1,500,000 feet of white pine saw-logs.

The defendants gave bond and retained the logs. They pleaded " *non cepit* and property."

In 1864, and previously, the plaintiffs and the defendants owned tracts of adjoining land in Potter county, containing 1000 acres ; the defendants' was numbered 5821 ; the plaintiffs' 5822.

In the winter of 1863 and 1864 the defendants went into possession of their tract of land for the purpose of cutting saw-logs.

Witnesses for the defendants testified that they put up a small shanty or two, made some roads, and a temporary log-slide ; there was a family in the building till they quit ; they boarded their men ; built a stable and kept oxen there ; they moved the shanty off after they were done.

Whilst the defendants were there cutting logs, they got over the dividing line between the tracts, and cut 1,006,378 feet on the plaintiffs' land, as the jury found.

Some witnesses testified that the line of the tracts ran through " the camp ;" some that it ran through the shanty ; some that the stable was in " the disputed territory."

The logs were floated down the Susquehanna into the Susquehanna boom, in Lycoming county, and when there the replevin was issued.

[Young v. Herdic.]

The plaintiffs submitted, amongst others, the following point:

3. Even if the cabin was built on plaintiffs' land for the accommodation of the choppers, while taking off the timber, the land being previously wild and unseated, and the cabin and land were deserted by the defendants, and their choppers, after the logs were cut and hauled from the land in dispute, and before this suit was commenced, then there was no such possession as can preclude the plaintiffs' recovery.

The court (Jordan, P. J.) answered:—"If the cabin was built upon the plaintiffs' land for the accommodation of the choppers, while taking off the timber, the land being previously wild land and unseated, and the cabin and land were deserted by the defendants and their choppers, after the logs were cut and hauled from the land in dispute, and before this suit was commenced, the possession was not such as will preclude plaintiffs' recovery."

The defendants submitted, amongst others, the following points:

2. If the jury believe the defendants cut the logs in question, under a claim of property in the soil whereon they grew, the plaintiffs are not entitled to recover, and if that claim were really made, it matters not whether the claim were well or ill founded.

3. If the jury believe that at the time the logs in dispute were cut, the defendants were in actual possession of the soil upon which they grew, under a claim of title thereto, the plaintiffs cannot recover.

To these points the court answered: "If the jury believe the defendants cut the logs in question under a claim of property in the soil whereon they grew, the plaintiffs are not barred from recovering, unless the defendants were in the actual possession of the land at the time the timber was cut, claiming title to the land. But if the possession was of the character mentioned in the court's answer to plaintiffs' 3d point, it would not bar plaintiffs' recovery.

There was a verdict for the plaintiffs for $4306.75.

The defendants took a writ of error, and assigned the foregoing answers of the court for error.

W. H. Armstrong and H. C. Parsons, for plaintiffs in error, cited Powell v. Smith, 2 Watts 127; Mather v. Trinity Church, 3 S. & R. 509; Baker v. Howell, 6 Id. 476; Brown v. Caldwell, 10 Id. 114; Harlan v. Harlan, 3 Harris 514; Clement v. Wright, 4 Wright 250; Snyder v. Vaux, 2 Rawle 427; Wright v. Guier, 9 Watts 175; Stevens v. Hughes, 7 Casey 381; King v. Baker, 1 Id. 188.

G. White and J. W. Comly, for defendants in error, cited Martin v. Porter, 5 M. & W. 351; Morgan v. Powell, 3 A. & E. N. S. 278; Wood v. Morewood, Id. 439 (43 E. C. L. R. 734, 810);

Harlan *v.* Harlan, 3 Harris 507 ; Clement *v.* Wright, 4 Wright 250 ; Brewer *v.* Fleming, 1 P. F. Smith 102 ; Wright *v.* Guier, 9 Watts 177 ; Elliott *v.* Powell, 10 Id. 453 ; Hall *v.* Powell, 4 S. & R. 456 ; Washabaugh *v.* Entriken, 10 Casey 74 ; Hole *v.* Rittenhouse, 1 Wright 118 ; Altemore *v.* Halffsmith, 9 Wright 128 ; Mather *v.* Trinity Church, 3 S. & R. 509 ; Baker *v.* Howell, 6 Id. 476 ; Brown *v.* Caldwell, 10 Id. 114 ; Powell *v.* Smith, 2 Watts 127.

The opinion of the court was delivered, May 13th 1867, by

AGNEW, J.—The parties in this case were the owners of adjoining tracts of unseated timber land in Potter county.   The defendants below went upon their own tract in the winter of 1863-4 to cut timber, and built a shanty or log cabin, and a stable, to accommodate the hands engaged in chopping and hauling.   One of the defendants' witnesses thought the shanty was on the disputed territory, but was not positive, and three others said the line ran through the shanty, while one said the stable was on the disputed land.   The plaintiffs' witness testified that the cabin or shanty was not on the plaintiffs' land, but that the line crossed the stable. The title of neither of the parties to their own tract was disputed, but the defendants cut timber across the plaintiffs' boundary, under the belief that their land extended to another line within the plaintiffs' tract.   As soon as the defendants' hands had got through cutting and hauling the timber, they left the land, abandoning the temporary buildings they had erected.

A verdict for the plaintiffs for the timber cut was found under the following instructions of the court: " That if the cabin was built on plaintiffs' land for the accommodation of the choppers while taking off the timber, the land being previously wild and unseated, and that the cabin and land were deserted by the defendants and their choppers after the logs were cut and hauled from the land in dispute, and before this suit was commenced, the possession was not such as will preclude the plaintiffs' recovery."

If right, this instruction covers all the points raised by several specifications of errors.

All turn on the question, what is an actual possession of unimproved land ?   In Hole *v.* Rittenhouse, 1 Casey 492, Lewis, C. J., said : " If any principle in the law of Pennsylvania can be regarded as settled by argument and authority, it is that which affirms that the legal title to uncultivated lands draws to it the possession, and that this possession is to be deemed *actual for all the purposes of remedy*, until it is interrupted by an *actual* entry and *adverse* possession taken by another, and nothing short of an actual possession permanently continued will take away from the owner the possession which the law attaches to the legal title."   It is true this was said in an ejectment and of the possession to give

[Young v. Herdic.]

effect to the Statute of Limitations. But that this makes no difference is shown by the late C. J. Gibson, in Wright v. Grier, 9 Watts 172, 175, in which it was held that an action of trover would lie by the owner of an unseated tract for the asportation and conversion of trees felled by the occupant of an adjoining tract who had purchased both tracts at a sheriff's sale, of the title of one who owned the adjoining tract, and used to cut timber over on the plaintiff's tract.

The same eminent judge afterwards cited and relied on Wright v. Grier, in Sorber v. Willing, 10 Watts 141. What constitutes an actual possession such as creates an ouster and tolls the possession of another has often been stated; and it does not consist in doing temporary acts upon the land without an intention to seat and occupy it for residence or cultivation, or for some other permanent use consistent with the nature of the property: Adams v. Robinson, 6 Barr 271; Hole v. Rittenhouse, 1 Casey 493; Beaupland v. McKeen, 4 Casey 134; Washabaugh v. Entriken, 10 Casey 74.

The doctrine of these cases finds a strong analogy and confirmation in another class defining the character of unseated and seated lands. In Wallace v. Scott, 7 W. & S. 249, it is said, "residence, with or without cultivation, or cultivation, with or without residence, stamps a new character on the tract." "A tract ceases to be unseated as soon as it is *actually occupied* with a view to *permanent use* as the property of the occupant." In Kennedy v. Daily, 6 Watts 272, Rogers, J., notices but two modes in which wild uncultivated land may be made to assume the character of seated tracts. 1st. Where a family has resided on the tract; and, 2d, where profits are drawn from the land, although no family resides on it. In other words, he says residence without cultivation, or cultivation without residence, or both.

In the present case, it could not be maintained that the temporary occupancy of the defendants' lands while cutting the timber would protect this land from a sale for taxes as unseated land. The entry was for no permanent use—it was neither to reside upon nor to cultivate it; nor was it to draw profits from it by any continued occupancy. This case, therefore, falls within the principle of Wright v. Grier, and other cases holding that trover or replevin will lie at the suit of the owner, for the timber cut upon the land of one in actual possession, or having the presumptive possession which the law casts upon the owner of the legal title of wild land. These principles were stated, and the authorities collected and classified recently, in the case of Brewer et al. v. Fleming, to be found in 1 P. F. Smith's R. p. 102.

The judgment is therefore affirmed.