## Lackawanna Lumber Company *v.* Kelley, Appellant.

*Ejectment—Evidence—Adverse possession—Cutting timber.*

In an action of ejectment binding instructions for plaintiff are proper where it appears that defendant's record claim was based upon a deed executed by an attorney-in-fact who had only power to make an executory contract for the sale of land, that defendant's claim to title by adverse possession, was not supported by any evidence of cultivation whatever, and that the only acts of dominion of defendant or his predecessors consisted of an occasional trespass for the purpose of cutting timber.

Argued March 16, 1908.  Appeal, No. 255, Jan. T., 1907, by defendant, from judgment of C. P. Clinton Co., May T., 1901, No. 147, on verdict for plaintiff in case of Lackawanna Lumber Company v. Uriah Kelley.  Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ.  Affirmed.

Ejectment for land in Leidy township.

At the trial the court gave binding instructions for the plaintiff.

Verdict and judgment for plaintiff.

On a motion for a new trial HALL, P. J., filed the following opinion.

After full argument and careful examination of the testimony in this case the court is unable to say that there was any error in the former trial, nor has anything been presented from which we can conclude the possibility of a different result if a new trial were granted.

Alexander Kelley, the father of the present defendant, took a conveyance of 116 acres and twenty-two perches of land from Horace M. Bliss, June 25, 1839.  His deed was recorded the next day and he went into possession some time thereafter. All of the land described in this conveyance lies upon the north side of Kettle creek, except a small portion in the southeastern corner which presents the general shape of a right angle triangle, the base or southern boundary of which extends east from the creek about sixty rods, the perpendicular running

thence north about the same distance to a point where it strikes the creek again opposite the mouth of Hammersley's Fork, and the creek itself forms the hypothenuse or northwestern side of this triangle. The defendant claims that after his grandfather had gone into possession of the land described by the Bliss conveyance he discovered that about forty acres on his northern boundary was an interference with the land of one Daugherty, and consequently to this part of his conveyance his ancestor took no title, and that in order to make the deficiency good Mark Slonaker, who had a power of attorney from the plaintiff's predecessors in title, undertook to give him an equal amount of land on the south side of Kettle creek adjoining his former conveyance, and that one Solomon Bastress, a surveyor, ran out the lines of this tract and marked them upon the ground. In support of this contention he offered in evidence a power of attorney from William Williamson, trustee, dated November 10, 1843, more than four years after the date of the conveyance to Kelley, authorizing Slonaker to make and deliver written executory contracts or agreements of bargain and sale for the sale and disposal of certain lands, including the lands in controversy. It does not confer upon him any right to affect the title of his principal by any other act than the execution of written contracts or executory agreements of sale. That he did attempt to rectify the alleged mistake in the Kelley conveyance rests entirely upon the testimony of Jane Corbin, a sister-in-law of Alexander Kelley, the original grantee, a woman now seventy-five years of age. She testified that she thinks she was twelve or thirteen years old when she heard a conversation between Mark Slonaker, Solomon Bastress and Alexander Kelley relating to the fact that Daugherty was finding fault with Alexander about his land and that Slonaker said " we will run on the other side and let Daugherty keep his land." After which she says, the three crossed the creek in a canoe carrying their surveying instruments and maps and went up the hill blazing the trees. And she says when they came back they stayed at her father's and she heard them tell her father that they had run Kelley's timber lot out. This statement of Jane Corbin's is followed by the introduction of a map drawn by Solomon Bastress and indorsed in his handwriting as follows : " The above draft rep-

resents a certain piece of land lying at the First fork of Kettle Creek in Clinton County, it being part of the Henry Drinker lands and part of Warrant No. 1085 and conveyed to Alexander Kelley by Horace M. Bliss and Sarah his wife, by deed dated 25 day of June, A. D. one thousand eight hundred and thirty-nine; recorded in the office for recording deeds, etc., in and for Lycoming County in Deed Book A A page 68 the 26 day of June, 1839. Solm. Bastress." The map itself, however, does not follow in any respect the courses and distances recited in the conveyance to Kelley referred to, but seems to be an attempt to relocate the lands so as to take in about forty additional acres on the south and to leave out about forty acres on the north which was included in the original conveyance. It appears that there are marks upon the ground south of Kettle creek made in 1843 showing lines which correspond generally with that portion of the Bastress map which shows territory south of the original conveyance to Kelley. In 1843 Jane Corbin was only eleven years old. To the additional forty acres included in the Bastress survey there was never any conveyance from the owners to Kelley. On the contrary, the owners conveyed this land to other parties in 1853, and from the year 1853 down to the present time the title to that portion of it which lies west of Turtle Point Run, which is the land in controversy in this suit, has been in parties other than those who held title to that portion of it lying east of Turtle Point Run.

Let it be clearly understood that there is no dispute as to lines and boundaries in this case. The location of the original conveyance to Kelley is admitted; some of the original corners are still upon the ground. Neither is there any question as to the location of the additional forty acres contained in the Bastress survey, but the defendant must sustain title to this, if at all, upon the ground that it was a parol gift of land followed by his entry thereon, under color of title and his subsequent maintenance of possession thereof, either by residence or cultivation within its lines continuously and openly for a sufficient period to establish a title in him by prescription. There was no such evidence in the case and no offer made by the defendant that would have covered this point if admitted. We are satisfied that if Kelley had entered upon any portion of this forty acre

tract under color of title and had maintained possession thereof, either by residence or cultivation, for a period of twenty-one years, it would have been sufficient to draw to him all of the land contained within this additional tract as shown by the marks upon the ground land including the timber, lying west of Turtle Point Run, now in controversy, even though such residence or cultivation had been on that portion of the tract lying east of Turtle Point Run which has been owned by other parties since 1853 and which is not involved in the present suit. But as we have said there is no such testimony and no such offer. The defendant it is true offered to prove that Kelley's widow received pay for certain timber which was cut on the Bastress survey east of Turtle Point Run and to show that this widow leased part of the lands east of Turtle Point Run for banking purposes, and defendant also offered to prove that timber on this tract east of Turtle Point Run was cut by the said widow and other heirs of Alexander Kelley after her death; and all of the offers relating to the taking of timber specifically cover not only all of the land east of Turtle Point Run within the additional forty acres, but also the triangular piece lying on the north of it and between it and Kettle creek which was contained in Kelley's original conveyance from Bliss, but none of the offers relating to the taking of timber or the banking of logs would be sufficient if proved to create a title by prescription, and when it comes to the making of an offer to prove cultivation on the land south of Kettle creek, the offer is very ingeniously drawn to the effect " that a portion of the land east of Turtle Point Run suitable for cultivation was cultivated many years." This part of the offer is fatally defective in failing to specify that the cultivation existed for a sufficient period of years to establish title by prescription. Its ingenuity consists in the fact that it does not specify that the portion of land which was cultivated was within the lines of the additional forty acres. As a matter of fact the cultivation referred to on the lands east of Turtle Point Run occurred within the lines of the original conveyance from Bliss to Kelley. This is shown by the testimony of both Mr. Mitchell and Mr. David, one the surveyor for the plaintiff and the other the surveyor for the defendant. But further than that there is no doubt that at the time of the original conveyance

to Kelley the southern bank of Kettle creek for its whole distance through these lands was the side of a mountain so precipitous as to make its cultivation impossible. This precipice was broken at one point only where Turtle Point Run flows into Kettle creek from the south. It appears from the testimony and from the connected draft introduced by the defendant as exhibit " L " that between this point and Hammersley's Fork, which flows into Kettle creek from the north at the eastern boundary of Kelley's conveyance, there was an island extending almost the entire distance between the two streams, which was in the southwest corner of the Bliss conveyance. The southern channel was the boundary of warrant 3640 as shown by the original survey of the warrant. This channel is now closed at the upper end. This was probably done because, as the evidence shows, a mill and dam was built on the northern channel through which the creek now flows exclusively, but the general course and location of the original or southern channel is shown upon defendant's exhibit " K " where it is marked " water course, " and also as I have said upon the connected draft, known as exhibit " L." All the cultivation ever attempted on what is now the south side of Kettle creek within the lines of the triangular southeast corner before referred to which was a part of the original conveyance from Bliss and was probably done upon this island, but certainly within the lines of the original Bliss conveyance. No cultivation was ever attempted within the lines of the additional forty acres, nor as a matter of fact was any cultivation possible within those lines, the lines included therein being situated upon an almost perpendicular mountain side. The defendant's offer in this respect is confusing for the reason that it would have enabled him to show cultivation east of Turtle Point Run and south of Kettle creek and yet within the lines of Kelley's original conveyance and entirely outside of the additional forty acres and, therefore, of no avail in proving possession of the latter tract. The map introduced by defendant, exhibit " K, " was evidently designed for the same purpose that, it does not show the south line of the Bliss conveyance, neither does the map agree with the courses and distances in the conveyance from Bliss to Kelley, nor with the Bastress map, nor with the marks upon the ground.

The doctrine of consentable lines, so strongly urged by one of the counsel for defendant, has no application whatever to this case. There is no claim here that an attempt was made to agree upon a disputed boundary between the adjoining land-owners. This is an attempt to maintain a parol gift by possession. It matters not that the land so given adjoins the lands previously owned by the grantee. The doctrine would be the same if the parol grant had been to forty acres, situated a mile away, and to make it valid it would have to be followed, either by written conveyance thereof or by residence or cultivation within its boundaries. There was no offer on the trial to prove residence or cultivation within the lines of the additional forty acres taken in by the Bastress map. There has been no attempt to show such residence or cultivation within those lines since the trial, on the hearing of this motion, and it is clear to the mind of the court that in fact there never was, and from the nature of the ground never could have been, any such residence or cultivation, and that the only acts of dominion ever exercised by Kelley, or any of his successors in title to that forty acres, consisted of an occasional trespass for the purpose of cutting timber.

The motion for a new trial is, therefore, refused.

*Error assigned* was in giving binding instructions for plaintiff.

*C. S. McCormick* and *T. C. Hipple,* for appellant.—A boundary line between adjoining owners which can be clearly traced, may be altered by the acts or agreements of the parties, and a purchaser from one of them, with notice, will be bound by such consentable line : Perkins v. Gay, 3 S. & R. 327 ; Hagey v. Detweiler, 35 Pa. 409 ; Kellum v. Smith, 65 Pa. 86.

The cultivation of several acres fixes the denomination of the whole, and charges the person of the cultivator so as to render a sale for taxes illegal : Biddle et al. v. Noble et al., 68 Pa. 279 ; Breisch v. Coxe, 81 Pa. 336 ; McClement's Appeal, 2 Pa. Superior Ct. 443.

Kelley took this land in good faith in the place of the land he lost ; he believed it was given to him in place thereof ; he cleared the most desirable part of it east of Turtle Point Run ;

he cut or sold to others, who cut the timber off from the parts of it, as did his widow and heirs after his death. He took firewood, fencewood and building material off the remainder of the land, so that it is difficult to see how he could have acted more consistently with the belief he was the undisputed owner. He had, to say the least, a color of title, and what he did was under such claim of title : Hole v. Rittenhouse, 25 Pa. 491 ; Lawrence v. Hunter, 9 Watts, 64.

W. C. *Kress* and D. L. *Krebs,* for appellee.—Slonaker was not authorized, after the execution of the power of attorney, to make title by gift to Kelley : Shelhamer v. Thomas, 7 S. & R. 106 ; Paul v. Grimm, 165 Pa. 139 ; Rice v. Lewis, 4 Atl. Repr. 810.

The fact that a surveyor, who had once been employed by the owner of a tract of land to run one of his lines, was afterwards employed by the board of property to resurvey the whole tract, and in doing so had marked a line between it and the adjoining tract, is not sufficient evidence of the establishment of a consentable line to go to a jury : Kerr v. Wright & Pier, 37 Pa. 196 ; Adamson v. Potts, 4 Pa. 234.

The adjoining owner marking his lines over the division line does not constitute adverse possession : Altemus v. Trimble, 9 Pa. 232.

Evidence of the customary use of woodland, as by taking firewood and lumber therefrom, will not avail to destroy a valid title in another, unless accompanied by proof of actual possession, by residence or cultivation of part of the tract to which the woodland belongs within the interference under color of title, or by marked boundaries taken and maintained for twenty-one years : Hole v. Rittenhouse, 37 Pa. 116 ; s. c., 25 Pa. 491 ; Heller v. Peters, 140 Pa. 648 ; Bear Valley Coal Co. v. Dewart, 95 Pa. 72 ; Goodman v. Sanger, 85 Pa. 37 ; McArthur v. Kitchen, 77 Pa. 62 ; Olewine v. Messmore, 128 Pa. 470 ; Handley v. Barrett, 176 Pa. 246.

PER CURIAM, May 11, 1908 :

The judgment is affirmed on the opinion of the court below refusing a new trial.