# Marks *v.* Ligonier Borough, Appellant.

*Deeds—Identification of land—Location.*

1. The object of a description in a deed is to identify the land conveyed, and need not necessarily be technically accurate, but must be sufficiently precise for the purpose of identification, and to enable a surveyor to locate it. While it is the province of the court to construe the deed, the question of the location of the land is for the jury where the evidence relating to the location is disputed.

*Trespass—Ejectment—Parties—Evidence.*

2. In an action of trespass against a borough to recover damages for lands appropriated for reservoir purposes, where it appears that the title to the land had been determined in the plaintiffs in a prior action of ejectment in which they had been named as defendants, and it also appears that in the action of trespass the question involved was the location, and not the title to the land, evidence relating to the use and occupancy of it prior to the ejectment, is admissible.

Argued Oct. 5, 1911. Appeal, No. 88, Oct. T., 1911, by defendant, from judgment of C. P. Westmoreland Co., May T., 1903, No. 205, on verdict for plaintiffs in case of Lemon Marks et al. v. Ligonier Borough. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for the appropriation of land.

At the trial the jury returned a verdict for $1,931.30 for plaintiffs.

On motion for a new trial GALBREATH, P. J., specially presiding, filed the following opinion:

The pending case is an action in trespass brought by the plaintiffs against the defendant borough to recover damages alleged to have been sustained by reason of the taking of a portion of ground for reservoir purposes and the laying of water lines in connection therewith. The land so taken is part of a larger tract of fifty-five acres situate in Ligonier township, Westmoreland county, the title to which at the inception of this suit was claimed by the plaintiffs herein and also by Beck and Brown to whose predecessors in title, the Franklin Investment Company, the borough of Ligonier gave bond when it entered upon and appropriated the land for reservoir purposes. Subsequent to that time the title of the Franklin Investment Company, through sundry conveyances, vested in John E. Beck and George Brown. The title to the land taken for reservoir purposes being thus in dispute, said Beck and Brown brought an action in ejectment against the present plaintiffs and Marks' heirs at No. 481, August Term, 1907, for the said larger tract of fifty-five acres claimed by both parties. The verdict of the jury in that case was as follows: "Now, to wit: 21 February, 1908, we, the jurors empanelled in the above entitled case, find for the defendants the five acres as per Exhibit No. 5; also the eleven acres and one hundred perches as per Deed Book 64, page 66, a total of sixteen acres and one hundred perches; the balance of the fifty-five acres in dispute to go to the plaintiffs with six cents damages and costs."

The deed referred to in the above-recited verdict was made by Catherine Wadsworth to Nancy Marks, who was the mother of the present plaintiffs, and described the land conveyed as being "bounded on the North by Washington Furnace Run; by the Furnace Lands on the East and South and on the West by lands of the said Nancy Marks and Joseph Naugle, containing eleven acres and one hundred perches."

There is no question as to the location of the five acres as shown on exhibit No. 5 in that case. The controversy arises over the true location of the eleven acres and 100 perches described in the deed recorded in Deed Book 64, p. 66. Plaintiffs claim that the reservoir site is a portion of the land described in said deed. The defendants contend that it is not.

It appears that no location of the eleven acres and 100 perches can be made which will, in all respects, fit in with the description found in the deed, nor is it necessary that the description should be technically correct provided it is sufficiently precise to enable a surveyor to locate it. On the trial of the case a plot or draft was offered in evidence, showing the location of the land as claimed by the defendant and which, while not fitting in precisely with the description in said deed, yet conformed thereto in reasonable measure and which so located the land as to exclude the reservoir site. No plot or draft was introduced on part of the plaintiffs to locate their claim to the eleven acres and 100 perches. They offered oral testimony, however, tending to show that it could with an equal degree of certainty be so located as to include the reservoir site. It was brought out also on cross-examination of W. H. Mathews, a surveyor called as a witness by the defendant, that if certain facts in evidence were assumed he would have located the eleven acres and 100 perches where the reservoir now is. In addition to this it was testified by W. H. Buell, a witness on part of the plaintiffs, that his father who sold the land to Catherine Wadsworth, who made the aforesaid deed to Nancy Marks, did not convey all the land owned by him, but reserved the northwest portion lying north of the five-acre tract owned by the Marks. If this be correct it follows that the portion so retained not having passed to Catherine Wadsworth did not therefore pass by her deed to Nancy Marks, but the portion so retained is included in defendant's draft, exhibit No. 1, above referred to. If its inclusion was therefore an error it is evident that the plot must be extended

eastward and so exclude the reservoir site in order to make up the eleven acres and 100 perches.

These matters are adverted to for the purpose of showing that the location of the land described in Deed Book 64, p. 66, was a question of fact to be determined by the jury and not one of law to be determined by the court, as contended for by defendant's counsel. The land as described in said deed can with almost equal degree of certainty or uncertainty be located so as to include or exclude the reservoir site. This being true, the court on the trial of the case, admitted oral testimony showing the occupancy of the reservoir site by the Wadsworths before the said deed was made and by Nancy Marks and those holding under her after the making of said deed. This testimony tended to show the understanding of the description in the deed by the parties whose negotiations and intentions were merged in it and helped to solve the latent ambiguity growing out of the situation.

The form of the verdict is as follows: "And now, to wit: December 1, 1909, we, the Jurors empanelled in the above entitled case, find for plaintiffs. We find the reservoir is on the eleven acres, one hundred perches belonging to Marks Heirs, as on Exhibit No. 5. We find damages in the sum of $1931.30 and costs." This verdict is inartfully drawn in that it connects the eleven acres and 100 perches with exhibit No. 5, instead of with the description contained in the deed recorded in Deed Book 64, p. 66. The purport, however, is clear and the verdict should be given the effect of its evident meaning and this can well be done by discarding as surplusage its reference to exhibit No. 5. It is also urged that the verdict is excessive. The evidence relative to the amount of damage sustained, it may be conceded, was not only conflicting, but lacking in that degree of definiteness which is desirable. When we consider, however, that the land was appropriated some fourteen years ago and that the witnesses were required to give their estimates as of that time, it is not surprising that the evidence is less satisfactory than could be desired.

But we may assume that after this interval of years, the evidence adduced was the best possible under the circumstances. The length of time since the taking of the land accounts also, in part, no doubt, for the amount of the verdict, which represents not only the compensation due the plaintiffs for the damage sustained at the time the land was taken, but also that arising from the detention of such damage from the time it was sustained up until the date of the trial and verdict. On a former trial of the case, more than five years prior to that now under consideration, a verdict was rendered for the plaintiffs in the sum of $775.

We are well aware that the situation arising from any verdict and judgment in this case in favor of either party is unsatisfactory in that it does not necessarily settle the question of the location of the eleven acres and 100 perches of land between the present plaintiffs and Beck and Brown, who are not parties to the pending action, but that fact in no way militates against the right of the plaintiffs to prosecute their claim for damages as they have done in this case against the defendant borough.

When we consider that almost eight years have elapsed since the bringing of this suit, that two trials of the action have resulted in verdicts for the plaintiffs and that the principal question involved is one of fact for the jury and not of law to be declared by the court, and not being convinced of any serious error committed in the trial of the case, we conclude that the rule for a new trial should be discharged and it is discharged accordingly and judgment is directed to be entered on the verdict, sec. reg.

*Errors assigned* were various instructions by which the court submitted the question of the location of the land to the jury.

*Robert W. Smith,* with him *James S. Moorhead,* for appellant.—When the location of land described in a deed is certain it needs not a jury to distinguish it from another

tract.  If it be admitted that the boundaries of the tract of land actually exist on the ground as named in the deed, the jury should not interpret the deed or determine that the land is in another place: Hughes v. Westmoreland Coal Co., 104 Pa. 207; Harvey v. Vandegrift, 89 Pa. 346.

*C. Ward Eicher,* with him *W. C. Peoples, John L. Kunkle* and *Alex. Eicher,* for appellees.

OPINION BY MR. JUSTICE ELKIN, January 2, 1912:

This is an action of trespass to recover damages for lands appropriated by the appellant for reservoir purposes, and for the purpose of laying water mains to connect therewith.  The tract of land claimed by appellees upon which the trespass was alleged to have been committed contains eleven acres and 100 perches.  The title to this tract of land was determined to be in the present appellees in an action of ejectment in which they were named as defendants.  Upon the trial of the action of ejectment the jury returned a verdict "for the defendants the five acres as per exhibit No. 5, also the 11 acres 100 perches as per Deed Book 64, page 66, a total of 16 arces and 100 perches, the balance of the 55 acres in dispute to go to the plaintiff with six cents damages and costs."  A motion was filed asking for a new trial on the ground that the verdict was void because uncertain and vague.  The trial court refused the motion for a new trial, ordered exhibit No. 5 and a copy of the description in Deed Book 64, p. 66, to be filed of record in the case, and directed judgment to be entered on the verdict.  From the judgment subsequently entered no appeal was taken and as a result the record shows an adjudication of the title to the eleven acres and 100 perches of land to be in the plaintiffs in the present case who were the defendants in the action of ejectment. The description in Deed Book 64, p. 66, to which reference was made in the verdict, and which was made part of the record in that case is as follows, to wit: "All that certain lot of ground situated in Ligonier Township,

Westmoreland County, Pennsylvania, bounded on the North by Washington Furnace Run, by the Furnace Lands East and South, and on the West by other land of the said Nancy Marks and land of Joseph Naugle, containing eleven acres and one hundred perches." The object of a description in a deed is to identify the land conveyed, and need not necessarily be technically accurate, but must be sufficiently precise for the purpose of identification and to enable a surveyor to locate it. The learned trial judge in the ejectment case held that the verdict based upon the description above recited was sufficient to meet the requirements of the rule, and although that question is not now before us, we concur in the conclusion then reached. In the present case we start with title to the eleven acres and 100 perches in appellees, and the only question for determination is whether the reservoir is located on this tract of land. This was the disputed question throughout the trial, and it necessarily depends upon the location of the land described in Deed Book 64, p. 66. The first contention of appellant is that under the facts the location of the land was for the court and not for the jury. It is argued that the verdict in the ejectment case was sufficiently definite to enable a surveyor to locate the land and that a surveyor did locate it so as not to include the reservoir site. Two surveyors were called as witnesses for the purpose of locating the tract in question, but neither of them made an actual survey on the ground. The first surveyor called took as the basis of his computation the eastern line of the Joseph Naugle tract as shown in the exhibit and with this as a starting point undertook to locate the tract between the Furnace run and the Old Furnace road, which were the northern and southern boundaries mentioned in the description contained in the deed. This left the eastern boundary an arbitrary line drawn by the surveyor so as to include the exact amount of land contained in the deed referred to in the verdict. The second surveyor in the main corroborated the testimony of the first in this paper location of the tract. The

plot from which the first surveyor made his deductions did not show the lines of the eleven-acre 100-perch tract. It showed a tract containing sixteen acres and 100 perches which of course included the tract in question, but did not definitely locate it. The second surveyor called conceded that the tract in dispute here might be located so as to include the reservoir site, and if certain facts recited from the evidence were true, he would so locate it. It was in evidence that there was an old fence from the northeastern corner of the Nancy Marks' five-acre tract to Furnace run and that the land between this fence and the reservoir had been cleared and tilled for many years. Taking the old fence as a starting point the second surveyor conceded that the tract in question could be located on the ground so as to include the reservoir. Indeed, with all the facts as to possession and occupancy established, he testified that he would so locate the land. All of these facts tend to show that the paper location fixed by the surveyors depended not upon actual marks or monuments on the ground, nor upon possession and occupancy following the course of title, but assuming the Naugle line as a starting point included sufficient area, between certain general boundaries mentioned in the deed and an arbitrary eastern line drawn for the purpose, to make the required number of acres. Under these circumstances we think that neither of the surveyors nor any of the witnesses called for the purpose, did so definitely locate the tract as to warrant the trial judge in determining the question as a matter of law. The location of the land was a disputed question of fact and this was for the jury. As far back as Collins v. Rush, 7 S. & R. 147, it was held that while the construction of a written conveyance is the exclusive province of the court, the description of land conveyed, its limits and contents, are frequently mixed questions of law and fact. The books are full of cases in which this rule is recognized and approved. In the case at bar the location of the land was a question of fact for the jury and we see no error in its submission.

This brings us to the consideration of the second question raised by appellant, which is, should the jury have been permitted to consider testimony relating to the use and occupancy of the land prior to the trial of the action of ejectment? It is contended that all questions relating to use and occupancy were submitted to the jury in the ejectment trial and that the verdict in that case concludes the defendants there who are the plaintiffs here, from again introducing testimony of this character in an action of trespass for damages to the same tract of land. In other words, that all of these questions were merged in the verdict upon which plaintiffs must stand. This position ignores the different issues involved in the two trials. At the trial in the action of ejectment the question in controversy was title to the land, while in the case at bar the question for determination was its location. No question of title was involved in the present suit. Again, the jury in the ejectment trial found that the title to the premises described in Deed Book 64, p. 66, was in the present plaintiffs. It therefore became necessary in the case at bar for the plaintiffs to offer that deed in evidence which was done. This was followed by testimony, uncontradicted, tending to show that for more than fifty years the plaintiffs and their predecessors in title had used and occupied the land in question, including the reservoir site; and that they had used and occupied the buildings, garden and sawmill actually located on the land now appropriated upon which the trespass for which damages are claimed was alleged to have been committed. No objection was made to the offer and admission of this testimony, and no motion was made to strike it out at the conclusion of the trial. A point was submitted requesting the court to instruct the jury that no such testimony could be considered upon the ground that exhibit No. 1 was a correct survey of the land awarded to the plaintiffs by the verdict in the ejectment trial and that this survey showed the reservoir not to be included in the premises described in Deed

Book 64, p. 66. The trial judge refused the point and we think properly so. Exhibit No. 1 was not necessarily a correct survey of the land described in Deed Book 64, p. 66. The surveyor who prepared the exhibit admitted on the stand that he had not made a survey of the particular tract in question. How could the court instruct the jury that it was a correct survey when the surveyor testified that he had not made a survey at all? In this connection we agree with the views expressed by the learned court below in the opinion filed denying the motion for a new trial. The whole case depended upon the location of the eleven-acre 100-perch tract and under the facts this was for the jury.

The able argument of counsel for appellant has failed to convince us that any reversible error was committed in the trial of the case.

Judgment affirmed.