359 A.2d 817

Robert Lee MURRER and Maria G. Murrer,
his wife, Appellants,

v.

AMERICAN OIL COMPANY, a corporation and
Findlay Township Water Authority.

INN LE'DAERDA, INC., a Pennsylvania
Corporation, et al., Appellants,

v.

AMERICAN OIL COMPANY.

Superior Court of Pennsylvania.

June 28, 1976.

C. Francis Fisher, Fisher & McGinley, Pittsburgh, for appellants.

James M. Arensberg, Tucker, Arensberg, & Ferguson, John B. Montgomery, Pittsburgh, for appellee.

Before WATKINS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

### I. *Appeal No. 379, April Term, 1975.*

Appellants brought this action to quiet title on September 5, 1969, with regard to a triangular piece of land located in Findlay Township, Allegheny County. At one time, this land was a part of a patent acquired by one Robert Greenlee in 1792. The patent was later divided into a western and an eastern portion, and then the eastern portion was divided into a northern and a southern portion. On November 6, 1915, one A. D. McCabe acquired the northern portion by sheriff's deed, and on January 6, 1917, his wife Margaret acquired the western portion, also by sheriff's deed. The southern portion was owned by one George McCallister; this portion was also conveyed by sheriff's deed on January 6, 1917, but to one John K. Wymard; it was never acquired by either of the McCabes. The triangular piece in dispute is located approximately at the point at which the western, northern, and southern portions meet. Appellees and appellants both claim ownership under the McCabes— appellees by virtue of a deed of March 29, 1919, by which the McCabes conveyed to one Elizabeth Gundelfinger, and appellants by virtue of a deed of May 2, 1939, by which the McCabes conveyed to one Ross Potts.

The matter was tried without a jury in October 1971, but at the request of all parties a decision was deferred while a number of other lawsuits that involve boundary disputes arising out of some of the same deeds were filed or brought up to date.[1] On January 4, 1973, pursuant to an opinion filed December 29, 1972, judgment was entered for appellees. This appeal followed.

1. See *Inn Le'Daerda, Inc. v. Davis et al.,* —— Pa.Super. ——, 360 A.2d 209 (1976).

The parties agreed at trial that in 1919 the triangular piece in dispute was entirely owned by Margaret McCabe, and that it was therefore within the power of the Mc-Cabes to convey it to Elizabeth Gundelfinger by their deed of March 29, 1919. The point of dispute is whether in fact the triangular piece was included by the description in that deed. The lower court found that it was. From that finding it followed that the McCabes could not by their deed of May 2, 1939, convey the triangular piece to Ross Potts, appellants' predecessor in title.[2]

The decision whether the triangular piece was included by the description in the Gundelfinger deed depends upon how certain conflicts in the description are reconciled.

It is established that where a conflict in boundaries occurs as the result of conveyances from the same grantor (here, the McCabes), the title of the grantee in the conveyance first executed (here, Gundelfinger) is superior. *Will v. Piper*, 184 Pa.Super. 313, 319, 134 A. 2d 41, 44 (1957). The first grantee's claim is superior, however, "only upon the basis of [his] own deed calls reconciled with the monuments on the ground and proceeding from the point of beginning established in [his] own deed." *Walleigh v. Emery*, 193 Pa.Super. 53, 60, 163 A.2d 665, 668 (1960).

It is also established that "[t]he question of what is a boundary line is a matter of law, but where a boundary line, or corner, is actually located is a question for the trier of fact." *Guerra v. Galatic*, 185 Pa. Super. 385, 391, 137 A.2d 866, 869 (1958). Where the findings of a chancellor are supported by credible evi-

2. In view of our disposition of the case, we need not consider the alternative conclusions of the lower court that appellants being in privity with the McCabes, they are estopped from asserting a title contrary to that conveyed to Gundelfinger, and that if in fact appellants had acquired title to the triangular piece through Potts, appellees have nevertheless acquired superior title by adverse possession.

dence, they will not be reversed on appeal. *Id.* at 390, 137 A.2d at 869.

The first conflict in the description in the Gundelfinger deed concerns the location of the point of beginning. This point was described as follows:

> BEGINNING at a point in the center of the macadam road which runs from the Borough of Coraopolis to the Village of Clinton, said point being the Southwesterly corner of the herein described tract of land and said point also being on the dividing line between the lands herein described and the lands now or formerly of George McCallister and other lands of A. D. McCabe one of the parties of the first part hereto
>
> . . . .

Appellants' Appendix I at 2c.

The lower court found that the point of beginning was located on the macadam road in the western portion of the original Greenlee patent—the portion owned by Margaret McCabe. Appellants assert, however, that the description of the point of beginning as "in the center of the macadam road" was an error, since the deed also stated that the property being conveyed was "a portion of the tract" conveyed to A. D. McCabe at the sheriff's sale, on November 6, 1915, and A. D. McCabe's property lines did not extend to the road. Appellants argue, therefore, that the point of beginning should be placed on the "dividing line" between the lands of McCallister and A. D. McCabe. (Point A on Appellants' Exhibit 3.) If this point is the point of beginning, the triangular piece is not included by the description in the Gundelfinger deed.

██ We believe that the lower court's finding with regard to the location of the point of beginning is sufficiently supported by the evidence. Appellants' own engineer testified that the point was located on the macadam road, and it appears that he was able to reproduce the Gundelfinger tract by using this point. (*See* Appellants' Exhibit 3.) There is nothing in the record to suggest

that the tract could be reproduced by beginning at the point appellants assert as the point of beginning, nor do appellants make any attempt to do so. The description continues from the point of beginning to describe a line "extending along the center line of said macadam road and along the center line of a township road connecting with said macadam road . . . ." (Appellants' Appendix I at 2c.) It is more probable that a mistake would be made with regard to the location of "the dividing line" between the lands of adjoining tracts than the location of the macadam road. Physical facts must be given weight in locating disputed corners. *Guerra v. Galatic, supra* at 391, 137 A.2d at 869.

The second conflict in the description in the Gundelfinger deed concerns the southern boundary of the conveyed land. From the point of beginning, the deed described a line running north, then east and south and finally, from a pin in what would be the southeast corner of the conveyed land, "thence along the line of lands now or formerly of said George McCallister North 61°45′ West two thousand one hundred seventy two (2172) feet to the place of beginning." (Appellants' Appendix I at 3c.) It is clear that by courses and distance, the deed described a straight line; appellants' engineer testified that the description as plotted and calculated is straight. However, appellants assert, and their engineer testified, that by the call for the adjoiner George McCallister, the line should be a jogged one.

■■ Where a line is described both by a call for adjoiner and by courses and distances, the call for adjoiner will usually prevail in the event of a conflict. *Myer v. Curry*, 291 Pa. 145, 139 A. 731 (1927); *Will v. Piper, supra; Green v. Schrack*, 16 Pa.Super. 26 (1901). However, this rule is merely one of several rules of construction intended to aid in determining the intention of the parties; it therefore need not be followed where the result would be plainly inconsistent with their intention.

*Baker v. Roslyn Swim Club*, 206 Pa.Super. 192, 198, 213 A.2d 145, 149 (1965). The court in *Baker*, approving the language of earlier cases, noted:

> Though some of the terms of description . . . are entitled usually to more probative value than others, yet, in the end, the true construction is ascertainable by the totality of their combined effect and not wholly and exclusively by any one term when it is irreconcilable with the other terms of description. To lay down the hard and fast rule that only monuments . . . are determinative elements of a description . . . is to make the rule contended for more important than the underlying intent of the contracting parties . . . .

*Id.* at 200–201, 213 A.2d at 150.

■ The fallacy of appellants' argument is that it assumes that by calling for adjoiner, the McCabes meant to call for a jogged line. If appellants were correct that by virtue of the call for adjoiner the line should be jogged, the fact that the description by courses and distances is clearly a straight line would strongly suggest that the McCabes were mistaken as to the correct line of the adjoining property. In deciding what somebody intends, one looks to what he says—here, that his property line is straight. Whether he is mistaken is immaterial; he may be mistaken but still think his line is straight and intend to convey accordingly. Thus, in *Baker v. Roslyn Swim Club, supra* at 198, 213 A.2d at 149, the court, quoting 12 Am.Jur.2d Boundaries, § 65, said:

> Where, however, it is apparent that a mistake exists with respect to the calls, an inferior means of location may control a higher one. In the last analysis the call adopted as the controlling one should be that most consistent with the apparent intention of the grantor.

■ It is true that if a grantor is mistaken as to his true line, he may find that he does not have the power

to convey he thought he had. However, whether the McCabes had the power to convey along the entire distance of the straight line described as the southern boundary in the Gundelfinger deed we need not decide, for we are concerned only with the triangular piece of land, which all have agreed was entirely within their power to convey.[3] Since they had both the intent and the power to convey the triangular piece, their 1919 deed to Gundelfinger did convey it; therefore they could not convey it later, in 1939, to appellants' predecessor in title, Ross Potts; and therefore appellants by their deed from Potts could not receive it.

## II. *Appeal No. 380, April Term, 1975*

The record reveals that these appellants brought an action to quiet title with regard to a strip of land located to the east of the triangle involved in Appeal No. 379, *supra*. By consent order filed on December 21, 1972, by the lower court in No. 379, it was directed that all of the testimony received therein was to be incorporated by reference into this case and a decision rendered without further testimony or evidence. On January 4, 1973, pursuant to the opinion of December 29, 1972, in No. 379, judgment was entered, and this appeal was taken.

Affixed to the cover of the brief and to the cover of the record submitted by appellants in No. 379 is a printed label bearing the caption of the appeal in No. 380. Upon opening the brief, one finds no reference to the order being appealed from; there is no statement of questions as being the questions involved in No. 380, nor any history or arguments in No. 380. The record does not contain any record in No. 380. Our Rule 42 makes it clear that the statement of the questions involved is "in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered

---

3. The location of the correct line as between other properties, to the east of the triangular piece, is the subject of the appeal in *Inn Le'Daerda, Inc. v. Davis et al., supra* n. 1.

which is not set forth in the statement of questions involved or suggested thereby." *And see* Pa.Super.R. 39, 43, and 45. We conclude, therefore, that in effect no brief or record has been submitted in the appeal at No. 380. In these circumstances we shall apply Rule 47, which provides that an appellant's failure to submit his brief and record within sixty days after issuance of the writ of certiorari may result in dismissal of the appeal.

### III

In accordance with the above, the following orders are entered:

As to Appeal No. 379, April Term, 1975, the order of the lower court is affirmed.

As to Appeal No. 380, April Term, 1975, the appeal is dismissed.