397 A.2d 793

**William H. SMITH and Bernice G. Smith, Appellees,**

v.

**Ernest C. PETERMAN and Kathryn E. Peterman.**

**Kenneth W. BLESSING, Sr., and Carl E. Jarrett, Appellees,**

v.

**Robert E. RODGERS and Ernest C. Peterman.**

**Appeal of Robert E. RODGERS, Ernest C. Peterman
and Kathryn E. Peterman.**

Superior Court of Pennsylvania.

Argued March 27, 1978.

Decided Dec. 29, 1978.

Petition for Allowance of Appeal Denied May 4, 1979.

Lester L. Greevy, Jr., Williamsport, for appellants.

John P. Campana, Williamsport, submitted a brief for appellees, Smith.

Malcolm S. Mussina, Williamsport, submitted a brief for appellees, Blessing and Jarrett.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

SPAETH, Judge:

This is an appeal from an order by which appellees William and Bernice Smith were declared owners of a tract of land in Washington Township, Lycoming County, and appellees Kenneth Blessing and Carl Jarrett of a fifty foot right of way across that tract. The Smiths brought an action of ejectment against appellants Ernest and Kathryn Peterman, and Blessing and Jarrett an action to quiet title against appellants Robert Rodgers and Ernest Peterman, but because the actions concerned the same tract, they were consolidated for trial.

It may be helpful to read what follows by reference to a diagram, which is based on an exhibit of record. Record at 41(a) (Vol. III), Jarrett's Exh. No. 1.

The tract of land in dispute lies along the northwestern line of Legislative Route 298. In September 1946, Raymond Kurtz, the father of Bernice Smith and father-in-law of William Smith, purchased the tract from Edith M. Lose. The deed description was as follows:

> Beginning at a stone corner in the line of Roy Holmes on road leading from Elimsport, to Williamsport, thence by land of the same in a westerly direction three hundred and fourteen (314) feet to a pile of stones, thence in a northerly direction along the line of Roy Holmes and the Pennsylvania State Forest line five hundred and twenty (521) feet

to a stone corner; thence easterly along the line of William Hively one hundred seventy-five (175) feet to a white oak tree and the State Highway road leading from Williamsport to Elimsport, thence along said State Highway road about six hundred and ninety-seven (697) feet to the place of beginning containing about three and one-half (3½) acres more or less.

At the time of purchase Kurtz received a receipt from the seller, referring to the tract as lying along "Culbertson path." Record at 446(a).

Between 1946 and 1956, the Smiths and Kurtz used various sections of the tract. In 1947 and 1948 William Smith cut some lumber at the eastern and western ends, Record at 192(a); he also gathered firewood there and continued to do so annually until 1956, Record at 193(a). In 1948 or 1949 he cleared an area in the southwestern half of the tract and put in picnic facilities consisting of two tables and an outhouse. At some point he cut a road connecting the picnic area with Legislative Route 289, where a state highway was. Until 1956 the Smith family would use the picnic area on an occasional weekend during the summer. Record at 193a. In 1956, Kurtz conveyed the tract to the Smiths. Also in that year the Smiths began to construct a home where the picnic area had been; it was completed in 1962. At some point, they began paying taxes on the tract. Record at 36(a). In late 1964 or early 1965 the Smiths' daughter and her husband moved into a trailer in the northeastern section of the tract and lived there on and off for the next few years.

On March 30, 1973, the Smiths conveyed a fifty-foot right of way across the eastern section of the tract to Kenneth Blessing and Carl Jarrett, enabling them to have access to subdivisions located to the northwest of the Smith plot. The right of way, as will be seen from the diagram, cut the Smith property into two subdivisions, one to the west, containing more than half of the tract, the other to the east.

In the meantime, in 1955, the Petermans had purchased from William Hively the land adjoining the Smith property to the southeast. Between 1955 and 1975 the Petermans did

not contest the Smith's ownership of the Smith tract; in fact they maintained a blazed line along the Smiths' claimed northeastern boundary, and posted "No Trespassing" signs there. Record at 446a. In 1975 Ernest Peterman blackened out the blazes and painted a new line to the west of the old one, that is, over onto the tract claimed by the Smiths. Peterman placed "No Trespassing" signs on this new line, which intersected the right-of-way that the Smiths had given Blessing and Jarrett. Peterman presently claims this line as the proper boundary between his land and the Smiths. (See alternating dash-circle line on diagram.)

Robert Rodgers has owned land to the west of the Smith tract since 1968. The description of the Rodgers tract calls for it to adjoin the land of William Hively, the Petermans' predecessor, on its eastern boundary. In 1973 Rodgers conveyed the northeast section of his land to Howard and Marjorie Winters, by quitclaim deed. The description of the land conveyed states that it is bordered on one side by "Lands now or formerly of William Hively." Record at 97(a) (Volume III). In spite of this conveyance, appellant Rodgers claims the Petermans' property as his eastern boundary.

The lower court concluded that the Smiths had title to the tract they claim by virtue of adverse possession, and that they also had record title, and that, therefore, Jarrett and Blessing had title to the fifty foot right of way. The court specifically found that Petermans' proper western boundary was the same line as the Smiths' claimed eastern boundary and that because of the 1973 conveyance to the Winters, Rodgers had no arguable ownership rights to any part of the Smith tract.

Appellants argue that the lower court erred in finding, first, that the Smiths had title by virtue of adverse possession; second, that the Smiths had record title; and finally, that in his quitclaim conveyance Rodgers conveyed the western portion of the Smith tract.

This court has stated that "[o]ne who claims title by adverse possession must prove that he had actual, contin-

uous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty-one years. Each of these elements must exist, otherwise the possession will not confer title." *Inn Le'Daerda, Inc. v. Davis*, 241 Pa.Super. 150, 158, 159, 360 A.2d 209, 213 (1976). An adverse possessor " ' "must intend to hold the land for himself, and that intention must be made manifest by his acts" '." *Kaminski Brothers, Inc. v. Grassi*, 237 Pa.Super. 478, 480, 352 A.2d 80, 81 (1975). He must "keep his flag flying and present a hostile front to all adverse pretensions." *Commonwealth v. Bierly*, 37 Pa.Super. 496, 504 (1908). Building a residence on land or cultivating it in a regular and continuous way may after 21 years result in ownership. *See The Susquehanna and Wyoming Valley RR and Coal Co. v. Quick*, 68 Pa. 189 (1871); *Cf. Ewing v. Dauphin County Tax Claim Bureau*, 31 Pa.Cmwlth. 285, 375 A.2d 1373, 1375 (1977). However, as has been repeatedly said, "temporary acts on the land, . . . are not the actual possession required." *Inn Le'Daerda v. Davis, supra*, 241 Pa.Super. at 159, 360 A.2d at 213; *See Camp Chicopee v. Eden*, 303 Pa. 150, 154 A.2d 305 (1931) (placement of line fence, payment of taxes and occasional boating and fishing on claimed part of lake did not confer adverse possession); *Boyer v. Lengel*, 224 Pa. 357, 73 A. 323 (1909) (occasional cutting of timber or some logs); *Lackawanna Lumber Co. v. Kelly*, 221 Pa. 238, 70 A. 724 (1908) (occasional trespass for purpose of cutting timber); *Wickham v. Sutton*, 33 Pa.Super. 368 (1907) (occasional cutting of firewood and timber from plot and construction of road to effectuate removal of wood); *Young v. Herdic*, 55 Pa. 172 (1867) (temporary occupancy of land while cutting timber); *Hole v. Rittenhouse*, 37 Pa. 116 (1860) (occasional trespasses and payment of taxes).

It seems fair to summarize this case law as holding that only acts signifying permanent occupation of the land and done continuously for a twenty-one year period will confer adverse possession. *See Inn Le'Daerda, Inc. v. Davis, supra*, 241 Pa.Super. at 159, 360 A.2d at 213. Here, the Smiths have not sustained their burden of showing that they

engaged in such acts for the necessary amount of time. Their building of a house in 1956 could not result in title by adverse possession because that only occurred twenty years before the institution of this litigation. None of the acts that occurred before 1956—sporadic cutting of firewood and timber, occasional picnicking, and the building of a road into the forest—were sufficiently adverse. Therefore, even if these acts were done continuously, the pre-1956 period could not be tacked to the later one.

We cannot agree with the lower court that "[w]hile some of the above uses by themselves might not be sufficient upon which to base a claim of adverse possession, taken together we believe that continuous use of the land has been established for the requisite statutory period of twenty-one years." Record at 459a. The case law simply does not support the proposition that while certain "temporary" acts at any one time might not be enough to support adverse possession, enough of them occurring over time would. *See Wimmer v. Buonassi*, 36 Leh.L.J. 377 (1975) (Opinion by WIEAND, J.) (where children used woodland for play and hunting, dead wood was removed from time to time, soil was removed, cows grazed briefly on land, and "No Trespassing" signs were posted intermittently, these acts even when viewed as a "totality" did not result in title by adverse possession).

Since we conclude that the Smiths, Blessing, and Jarrett did not acquire title to any part of the tract by adverse possession, we do not reach the question of whether adverse possession of only the western section of the tract could have resulted in title by adverse possession of the eastern part. *See Inn Le'Daerda, Inc. v. Davis, supra.*

■ Although we believe the lower court erred with respect to adverse possession, we nevertheless will affirm its order, for we agree with the court's conclusion that the Smiths, and their predecessor in title, Raymond Kurtz, had record title to the tract. Appellants claim that because the deed gives erroneous courses and distances it is defective, and, furthermore, that the shortened distances given in the deed mean that the Smith property falls far short of the

land claimed by the Petermans. We find no merit in the first prong of appellants' argument. The Supreme Court has said that "[t]he object of a description in a deed is to identify the land conveyed, and need not necessarily be technically accurate, but must be sufficiently precise for the purpose of identification and to enable a surveyor to locate it." *Marks v. Ligonier Boro.*, 233 Pa. 372, 378, 82 A. 477, 479 (1912); *Cf. Port Authority of Allegheny County v. Flaherty*, 6 Pa.Cmwlth. 135, 293 A.2d 152 (1972). Here, the deed described a piece of land that was surveyed in 1976. The central question is not whether the land could be surveyed but whether the lower court was correct in agreeing with the surveyor's corroboration of the Smiths' northeastern boundary. We are inclined to believe that the lower court was correct. This court has said repeatedly that " '[t]he question of what is a boundary line is a matter of law, but where a boundary line, or corner, is actually located is a question for the trier of fact'." *Murrer v. American Oil Co.*, 241 Pa.Super. 120, 124, 125, 359 A.2d 817, 819 (1976) (citations omitted). Furthermore, "Where the findings of a chancellor are supported by credible evidence, they will not be reversed on appeal." *Id.* Here, the lower court was confronted by a deed that described the northeast corner as a "stone corner" and the northeastern boundary as "along the line of land of William Hively, One-hundred and seventy-five (175) feet to a white oak tree and State Highway road . . . ." The use of monuments to mark off the land was not very helpful because both appellants and appellees can point to separate existing piles of stone at one end and the state highway at the other. The Supreme Court has said that although monuments are important in determining questions of boundary, " '[w]here the monuments are doubtful, resort will be had to the courses, distances, and quantity'." *Howarth v. Miller*, 382 Pa. 419, 424, 115 A.2d 222, 224 (1955). The lower court found that the northeastern boundary claimed by the Smiths was the same length, 175 feet, as called for in their deed. Record at 447a. In addition, the court found that Peterman had painted over the blazed line, which corresponded with the northeastern boundary claimed by the Smiths, and had painted a new line

further to the west; that the receipt for the Smith land specified that it was along the "Culbertson path", and that this path closely parallels the northeastern boundary claimed by the Smiths; that before 1975, Peterman had not contested the Smiths' northeastern boundary, even though Peterman had bought his land in 1955; that an on-the-spot examination by the court confirmed that there was a pattern of old blazes along the northeastern boundary denied by the Smiths; that the presence of the old blazes as corroborated by a forestry expert; and finally, Raymond Kurtz testified that William Hively, the Petermans' predecessor in title, had shown him the line where he could cut firewood, and that this line corresponded with the northeastern boundary claimed by the Smiths. Record at 446a–448a. We think these findings adequately support the lower court judge's conclusion in favor of appellees.

We do not reach appellants' third argument, that Rodgers did not convey away any rights he may have had to Smiths' land in 1973, because of our holding that the Smiths have record title to the land they claim.

Affirmed.

HOFFMAN, J., did not participate in the consideration or decision of this case.