435 A.2d 190

Richard J. FLICKINGER and Wilbert D. Chrisner, Jr., Executors of the Estate of Wilbert Dean Chrisner, and Roland T. Keddie and Suzanne M. Keddie, his wife, Appellants,

v.

Annie V. HUSTON, her heirs and assigns, and all others having any right, title or interest.

Superior Court of Pennsylvania.

Argued Nov. 13, 1980.

Filed July 2, 1981.

Reargument Denied Oct. 20, 1981.

Richard F. Flickinger, Ligonier, for appellants.

Joseph Bonidy, Greensburg, for appellee.

Before PRICE, CAVANAUGH and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellants contend that the lower court erroneously denied their claim of title to certain land by adverse possession. We disagree and, accordingly, affirm the order of the lower court.

6

■ Appellants are Richard J. Flickinger and Wilbert D. Chrisner, Jr., executors of the estate of Wilbert Dean Chrisner (Chrisner), and Roland T. and Suzanne M. Keddie, a married couple to whom Chrisner's executors conveyed a portion of the land in question. They commenced this action in 1978 by filing a complaint to quiet title to a thirty-eight-acre tract of land in Ligonier Township, Westmoreland County. The record reveals that none of the parties nor any of their predecessors have ever resided on the tract. Appellants trace their claim through Chrisner, whose interest in the land arose in 1943. The facts giving rise to this litigation may be summarized as follows. In 1922, John J. Will, then the record title holder of the tract, mortgaged the property to Annabelle Will. This mortgage was subsequently assigned to E. B. Shaffer in 1926. On December 1, 1927, John J. Will and his wife conveyed the entire tract to Annie V. Huston, the named defendant in the present case.[1] Subsequently, Shaffer foreclosed on the mortgage, and on May 5, 1933, after a sheriff's sale, the tract was conveyed to Shaffer by sheriff's deed. Shaffer conveyed the property to Chrisner's predecessor in title in 1935, and on June 9, 1943, Chrisner was granted the property. Chrisner died in 1976, still holding title dating back to the 1933 sheriff's deed to Shaffer. On July 5, 1978, the executors of Chrisner's estate conveyed a portion of the thirty-eight-acre tract to the Keddies. Sometime thereafter appellants discovered that the foreclosure proceedings through which Shaffer had acquired title in 1933 were defective in that Annie V. Huston, the record title holder at the time, had neither been notified of the proceedings nor had conveyed or released her interest in the property. Thus, in order to clear their title, appellants commenced this action against Annie V. Huston, her heirs and assigns, and all others having any interest in the tract. Appellants alleged in their complaint that by his acts of ownership and control from 1943 to 1976, Chrisner had

1. The deeds evidencing this and all other conveyances described herein were duly recorded in the land records of Westmoreland County.

acquired title to the tract by adverse possession. Service was effected by publication, and appellee Josephine Murphy subsequently filed an answer in which she averred that Annie V. Hutson was deceased and that she was Ms. Huston's daughter and only surviving heir. Appellee Murphy specifically denied appellants' claim of title by adverse possession, and the matter was tried before a court sitting without a jury. The court found appellants' evidence of adverse possession insufficient and entered an order dismissing their action. Following dismissal of exceptions and entry of a final order by the court en banc, appellants took this appeal.[2]

"It is well settled that he who asserts title by adverse possession must prove it affirmatively." *Robin v. Brown*, 308 Pa. 123, 129, 162 A. 161, 162 (1932). "[O]ne who claims title by adverse possession must prove that he had actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty-one years . . . . Each of these elements must exist, otherwise the possession will not confer title." *Conneaut Lake Park, Inc. v. Klingensmith*, 362 Pa. 592, 594–95, 66 A.2d 828, 829 (1949) (citations omitted). *See also Tioga Coal Co. v. Supermarkets General Corp.*, 289 Pa.Super. 344, 433 A.2d 483 (1981); *Smith v. Peterman*, 263 Pa.Super. 155, 397 A.2d 793 (1978); *Inn Le'Daerda, Inc. v. Davis*, 241 Pa.Super. 150, 360 A.2d 209

---

**2.** In addition to challenging the lower court's ruling on the issue of adverse possession, appellants contend in their brief that title to the tract should have been quieted in them as holders of valid record title. This is so, appellants explain, because neither Annie V. Huston nor anyone claiming through her ever challenged the validity of the 1933 foreclosure proceedings through which their ultimate predecessor in title, Shaffer, acquired title, and because any such challenge has long been barred by the six-year statute of limitations governing such claims. *See* Act of March 26, 1785, 2 Sm.L. 199, § 7; as amended by Act of July 8, 1885, P.L. 270, § 1; 12 P.S. § 76 (repealed). Appellants failed to raise this issue in either their pleadings or at trial, however, and instead based their case solely on their claim of title by adverse possession. Thus, the issue has not been preserved for our review. *Commonwealth v. National Federation of the Blind*, 471 Pa. 529, 370 A.2d 732 (1977); *Wenzel v. Morris Distributing Co.*, 439 Pa. 364, 266 A.2d 662 (1970).

(1976). "An adverse possessor must intend to hold the land for himself, and that intention must be made manifest by his acts.... He must keep his flag flying and present a hostile front to all adverse pretensions." *Smith v. Peterman, supra,* 263 Pa.Super. at 161, 397 A.2d at 796 (quotations and citations omitted). In *Inn Le'Daerda, Inc. v. Davis, supra,* we noted that

"[a] sporadic use of land, by one without title to it, will not operate to give him a title, no matter how often repeated.... It is true that residence is not necessary to make an adverse possession within the statute of limitation; the possession may be adverse by enclosing and cultivating the land ... but nothing short of an actual possession, permanently continued, will take away from the owner the possession which the law attaches to the legal title; temporary acts on the land, without an intention to seat and occupy it for residence and cultivation or other permanent use consistent with the nature of the property, are not the actual possession required.... Such occupation must be exclusive, and of such a character as compels the real owner to take notice of the possession of the disseisor...."

241 Pa.Super. at 159, 360 A.2d at 213 (quoting *Parks v. Pennsylvania Railroad Co.,* 301 Pa. 475, 481–82, 152 A. 682, 684 (1930) (citations omitted)). Thus, "only acts signifying permanent occupation of the land and done continuously for a twenty-one year period will confer adverse possession." *Smith v. Peterman, supra* 263 Pa.Super., at 161, 397 A.2d at 796.

■ In the present case appellants adduced the following evidence in support of their claim of title by adverse possession. From 1944 until his death in 1976, Chrisner was assessed and paid taxes on the property in question. Since 1976, Chrisner's executors have paid the taxes. Chrisner employed two men who, over an unspecified period of time, helped clear portions of the land, plant trees and erect

fences. Between 1946 and 1955, Chrisner erected a post and rail fence on the one side of the tract which fronts a highway and barbed wire fences on the other sides. There was little evidence regarding the exact nature and location of these fences; one of Chrisner's neighbors, John T. Bates, testified that the purpose of the barbed wire fencing was "to keep [Chrisner's] cattle in."[3] Sometime in the late 1940's or early 1950's Chrisner cleared the banks of two streams running through the property and put in field tile to drain a swampy area near the boundary with Mr. Bates' land. There was some testimony that Chrisner had leased a portion of the land to a neighbor for farming, but this evidence was quite vague and established only that the neighbor had gathered hay and grown corn there for two or three years in the mid-1940's. Appellants showed additionally that Chrisner had erected an outhouse and a flagpole in approximately 1959, and had permitted the Boy Scouts to use a portion of the tract as a camping ground between 1958 and 1968. Chrisner erected several picnic tables at some unspecified time, and his family and friends picnicked on the property periodically. Finally, appellants presented the testimony of two neighboring property owners, Bates and Clyde Giesey, who stated that they had always believed Chrisner to be the owner of the tract in question.

The lower court concluded that appellants' evidence of adverse possession "was vague and not tied together so as to be able to conclude that there was a continuous use for 21 years by Wilbert Chrisner and/or his successors in title." Lower Court Opinion at 5. We agree. Chrisner never lived on the tract, and there is no evidence that he cultivated the land continuously for twenty-one years. Moreover, lacking concrete evidence of the particular use to which the tract is suited, we cannot conclude that Chrisner's clearing of two stream banks, drainage of a swampy area, and planting of

3. Bates testified also that Chrisner's cattle "were in our garden quite a bit." There was no further evidence regarding any cattle that Chrisner may have kept on the property.

some trees were any more than "temporary acts on the land, without an intention to seat and occupy it for . . . permanent use consistent with the nature of the property." *Inn Le'Daerda, Inc. v. Davis, supra,* 241 Pa.Super. at 159, 360 A.2d at 213. The same can be said of the occasional use of the land for picnicking. *Smith v. Peterman, supra,* 263 Pa.Super. at 162, 397 A.2d at 796. Additionally, appellants' evidence of fencing erected around the property was vague and inconclusive. In *Robin v. Brown, supra,* our Supreme Court stated that one who relies on enclosure as proof of adverse possession "must show that [the land] was so substantially and visibly fenced in and the fence was so continuously and substantially maintained for at least twenty-one years as to amount to an assertion 'against the world' of his exclusive private ownership of that area of the earth's surface." 308 Pa. at 129–30, 162 A. at 162–63. *See also Dimura v. Williams,* 446 Pa. 316, 286 A.2d 370 (1972). Here, although fencing around the entire tract was apparently completed in 1955, appellants made no effort to show whether the fences were maintained over the next twenty-one years or even to describe their condition at the time of trial. Finally, although the payment of taxes on the property by Chrisner and appellants provides some support for their claim, it cannot rescue an otherwise inadequate evidentiary showing. *See Camp Chicopee v. Eden,* 303 Pa. 150, 154 A. 305 (1931); *Parks v. Pennsylvania Railroad Co.,* 301 Pa. 475, 152 A. 682 (1930); *Hole v. Rittenhouse,* 37 Pa. 116 (1860); *Green v. Schrack,* 16 Pa.Super. 26 (1901). Thus, we conclude that the lower court properly found the evidence of adverse possession insufficient to quiet title in appellants.[4]

Order affirmed.

**4.** We note additionally that the facts that Chrisner leased an unspecified portion of the land for farming for two or three years and permitted the Boy Scouts to camp on a portion of the land over ten years constitute, at most, temporary acts which are insufficient to support appellants' claim. Moreover, the fact that two of Chrisner's neighbors believed him to be the owner of the property is evidence only of notoriety, and does not augment appellants' inadequate evidence of actual and continuous possession.