454 A.2d 115

**KAMINSKI BROTHERS, INC.**

v.

**Dominick LUSSI and Catherine Lussi, Appellants.**

Superior Court of Pennsylvania.

Argued Dec. 9, 1981.

Filed Dec. 23, 1982.

Petition for Allowance of Appeal Denied April 15, 1983.

Patrick E. Dougherty, Wilkes-Barre, for appellants.

Richard J. Marusak, Hazelton, for appellee.

Before CAVANAUGH, McEWEN and BECK, JJ.

CAVANAUGH, Judge:

This appeal involves an action in ejectment brought by appellee Kaminski Brothers, Inc., in which it sought to evict appellants Dominick and Catherine Lussi from a tract of land in Luzerne County, Pennsylvania. The Lussis asserted ownership of the subject property by adverse possession. It was agreed that the Lussis were the owners of a house situated on the subject property irrespective of the status of title to the land on which it is located. The case was tried

before a jury, and a verdict was rendered in favor of the Lussis. Kaminski Brothers' subsequent motion for a new trial was granted by the lower court. It is from the order granting a new trial that this appeal was taken. Because we find that the lower court abused its discretion in granting a new trial, the order is reversed.

Appellants claim that there was sufficient evidence presented to the jury to support their claim of adverse possession and that the grant of a new trial was therefore improper. We agree. We recently summarized the burden of proof in adverse possession cases as follows:

> "It is well settled that he who asserts title by adverse possession must prove it affirmatively." *Robin v. Brown*, 308 Pa. 123, 129, 162 A. 161, 162 (1932). "[O]ne who claims title by adverse possession must prove that he had actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty-one years.... Each of these elements must exist, otherwise the possession will not confer title." *Conneaut Lake Park, Inc. v. Klingensmith*, 362 Pa. 592, 594–95, 66 A.2d 828, 829 (1949) (citations omitted). *See also Tioga Coal Co. v. Supermarkets General Corp.*, 289 Pa.Super. 344, 433 A.2d 483 (1981); *Smith v. Peterman*, 263 Pa.Super. 155, 397 A.2d 793 (1978); *Inn Le'Daerda, Inc. v. Davis*, 241 Pa.Super. 150, 360 A.2d 209 (1976). "An adverse possessor must intend to hold the land for himself, and that intention must be made manifest by his acts.... He must keep his flag flying and present a hostile front to all adverse pretensions." *Smith v. Peterman, supra*, 263 Pa.Super. at 161, 397 A.2d at 796 (quotations and citations omitted).

*Flickinger v. Huston*, 291 Pa.Super. 4, 7–8, 435 A.2d 190, 192 (1981).

Appellant Dominick Lussi currently lives with his sister, co-appellant Catherine Lussi, in one side of a double block house on the property which is the subject of this suit. Their parents, Frances and Rufino Lussi, first took possession of the property in 1918, and lived there until their

deaths in 1926 and 1962, respectively. Dominick was born in 1920 and has lived in the house for his entire life. Catherine has lived on the property since her parents first took possession in 1918. Lussi testified as to his family's use of the property. He recalled helping to clear the property when he was a child so that they could plant trees and a garden. He further stated that they fenced in the property so that they could raise animals and built sheds to house the animals. He has continued to make repairs to the house and surrounding property as needed and still plants a garden every year.

Appellee Kaminski Brothers claims record title to the land in question by virtue of a 1961 quit claim deed from the Essex Coal Company. It claims that, rather than being adverse, the possession of the land on the part of the Lussis and their parents was permissive under and pursuant to a self-renewing lease from year to year which was executed in 1918 between Hillside Coal and Iron Company, one of appellee's predecessors in title, as lessor, and Rufino Lussi and Giovanni Grassi, as lessees.[1]

Kaminski Brothers was unable to produce any lease regarding the property in question signed by Rufino Lussi. They did, however, introduce as evidence certain business records of the Hillside Coal and Iron Company. These records indicate that there was a lease between the coal company and Lussi and Grassi, for $7.00 per year rental for use of the land surface. The company's records indicate that as of April 1, 1934, the balance due on the lease was paid up. Kaminski Brothers produced no evidence to indicate that the Lussis had paid any rent to them or to any predecessor in title subsequent to April 1, 1934.

Dominick Lussi testified that as far as he knew, his father had never paid rent to anyone for use of the land. He did testify, however, that in 1940 or shortly thereafter,

1. Grassi lived in the other half of the double block house on the property in question. We note that a member of the Grassi family has successfully defended his title by adverse possession to the land surrounding the Grassi side of the double block dwelling. *See Kaminski Brothers, Inc. v. Grassi,* 237 Pa.Super. 478, 352 A.2d 80 (1975).

his boss, the owner of appellee's predecessor in title, gave him a document to take home to his father. The document had the word "lease" written on the outside. Lussi gave the document to his father, but his father refused to sign it. Appellant therefore returned the unsigned document to his boss.

The law in this Commonwealth is that:

> Where the possession, at its inception, *is permissive* ...., [The statutory period for an adverse possession claim] will not begin to run against the real owner *until there has been some subsequent act of disseizin or open disavowal of the true owner's title....*

*Moser v. Granquist,* 362 Pa. 302, 304–05, 66 A.2d 267, 268 (1949), quoted in *Roman v. Roman,* 485 Pa. 196, 200–01, 401 A.2d 361, 363 (1979); *See also, Glass v. Tremellen,* 294 Pa. 436, 144 A. 413 (1928).

In reaching a verdict in the instant case, the jury was required to determine whether the Lussis' possession of the land in question was initially permissive, and, if so, whether there was a subsequent "act of disseizin or open disavowal" of the owner's title, followed by at least 21 years of "actual, continuous, exclusive, visible, notorious, distinct and hostile possession" so as to establish title in the Lussis. *Flickinger v. Huston, supra.* The jury determined that the evidence did support the Lussis' claim of title by adverse possession. The lower court, in granting the appellee's motion for a new trial, stated that the Lussis failed to produce credible evidence sufficient to overcome Kaminski Brothers' evidence of a permissive use. The court stated that, in its judgment, the Lussis' evidence "falls so far short of proving ... an open and explicit disavowal [of the lease] that the verdict must be regarded as shocking to our conscience." Lower court opinion at 4.[2]

**2.** The lower court also stated in its opinion that "the jury was confused as to its duty" and that it rendered the verdict it did out of sympathy for the Lussis. The court's basis for this observation is the following question submitted by the jury foreman during the course of the jury's deliberations:

In reviewing an order granting a new trial, we are guided by the following principles:

A new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion. Neither should it ordinarily be granted on the ground that the verdict was against the weight of the evidence where the evidence is conflicting and the jury could have found for either party. *Burrell v. Philadelphia Electric Co.,* 438 Pa. 286, 289, 265 A.2d 516, 518 (1970); *Carroll v. Pittsburgh,* 368 Pa. 436, 445–46, 84 A.2d 505, 509 (1951); *Denby v. North Side Carpet Cleaning Co.,* 257 Pa.Superior Ct. 73, 79, 390 A.2d 252, 255 (1978). A new trial should be awarded on the ground that the verdict was against the weight of the evidence *only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice,* and the award of a new trial is imperative so that right may be given another opportunity to

Is it possible to award the parcel of land to the Lussis with the stipulation that ownership revert to the Kaminskis when the Lussis are deceased?

The fact that the jury at one point inquired as to the possibility of reaching some sort of compromise verdict does not support a conclusion that the final verdict was based on sympathy for one party rather than on the jury's assessment of the evidence. Jury deliberations "are secret and their inviolability must be closely guarded." *Friedman v. Ralph Brothers, Inc.,* 314 Pa. 247, 249, 171 A. 900 (1934). We do not believe that a jury's verdict should be discredited on the basis of an interpretation of an inquiry made during deliberations. Most questions posed by jurors will be subject to a variety of interpretations, as is the question posed by the jury in this case. It is possible, for instance, that the jury made this inquiry in the hope that a unanimous, rather than a split, verdict could be returned (the jury returned a 10 to 2 split verdict in this case). It is also possible that the inquiry was made at the request of only one juror, perhaps one of the two who eventually voted in favor of Kaminski Brothers.

In any event, the court's attempt to discredit the verdict on the basis of such an innocuous question is tantamount to an improper impeachment of a jury verdict. It has long been the rule that jurors cannot impeach their own verdict. *Commonwealth v. Sero,* 478 Pa. 440, 387 A.2d 63 (1978); *Friedman v. Ralph Brothers, Inc., supra; Commonwealth v. Williams,* 279 Pa.Super. 28, 420 A.2d 727 (1980); *Pittsburgh National Bank v. Mutual Life Insurance Company,* 273 Pa.Super. 592, 417 A.2d 1206 (1980). We think it equally improper for a court to, in effect, impeach a jury verdict.

prevail. *Burrell v. Philadelphia Electric Co., supra;
Denby v. North Side Carpet Cleaning Co., supra. See
also Brown v. McLean Trucking Co.,* 434 Pa. 427, 429–
30, 256 A.2d 606, 607 (1969); *Jones v. Williams,* 358 Pa.
559, 564, 58 A.2d 57, 60 (1948).

"The grant of a new trial is within the sound discretion
of the trial judge, who is present at the offering of all
relevant testimony, but that discretion is not absolute;
this Court will review the action of the court below and
will reverse if it determines that it acted capriciously or
palpably abused its discretion." *Austin v. Ridge,* 435 Pa.
1, 4, 255 A.2d 123, 124 (1969). *See also Burrell v.
Philadelphia Electric Co., supra* 438 Pa. at 288–89, 265
A.2d at 517.

*Cianci v. Burwell,* 299 Pa.Super. 387, 445 A.2d 809, 810
(1982). (emphasis added).

As we noted above, appellee was unable to produce a
copy of the lease which allegedly existed between its prede-
cessor in title and the appellants' father. Even assuming,
arguendo, that the business records of appellee's predeces-
sor in title were sufficient to establish that the Lussis'
possession was permissive at its inception, we feel that the
Lussis' failure to pay any rent for use of the land subse-
quent to 1934 and Rufino Lussi's refusal to sign a lease
presented to him in or around 1940 was sufficient evidence
to support a finding by the jury that the Lussis' possession
after that time was adverse.

While the evidence presented may well have been suffi-
cient to support a verdict for the appellee, we certainly do
not feel that the jury verdict in favor of appellants was "so
contrary to the evidence as to shock one's sense of justice."
*Burrell v. Philadelphia Electric Company, supra.* We
conclude, therefore, that the lower court abused its discre-
tion in granting the appellee's motion for a new trial.

Order of the lower court reversed.