524 A.2d 1367

**John W. HOOVER**

v.

**Jeremiah JACKSON, his heirs and assigns; Thomas Newton, his heirs and assigns; Nathaniel Lewis, his heirs and assigns; William Lewis, his heirs and assigns; John Dunlop, his heirs and assigns; Charles Huston, his heirs and assigns; Joseph Harris, his heirs and assigns; Samuel Christ, his heirs and assigns; and Beech Creek Borough Authority.**

**Appeal of BEECH CREEK BOROUGH AUTHORITY.**

**John W. HOOVER, Appellant,**

v.

**Jeremiah JACKSON, his heirs and assigns; Thomas Newton, his heirs and assigns; Nathaniel Lewis, his heirs and assigns; William Lewis, his heirs and assigns; John Dunlop, his heirs and assigns; Charles Huston, his heirs and assigns; Joseph Harris, his heirs and assigns; Samuel Christ, his heirs and assigns; and Beech Creek Borough Authority, Appellees.**

Superior Court of Pennsylvania.

Argued Feb. 19, 1987.

Filed April 30, 1987.

Michael K. Hanna, Lock Haven, for appellant in No. 410 and for appellee in No. 434.

Stephen W. Furst, Bellefonte, for appellant in No. 434 and for appellee in No. 410.

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

WIEAND, Judge:

In these cross-appeals from final judgment in an action to quiet title, there are two principal issues. The first concerns the sufficiency of the evidence to establish title by adverse possession of a tract of dense woodland; the second concerns the weight to be given to the amount of acreage recited in a deed when it is at variance with the actual acreage enclosed within the specific boundaries defined in the deed description. The trial court held that barricading a

road leading into the tract of woodland, together with sporadic use of the tract, was inadequate to establish title by adverse possession and that the specific boundaries recited in a deed description were controlling of the acreage conveyed. We affirm.

The disputed land is part of a 413¼ acre tract contained in a warrant issued by the Commonwealth of Pennsylvania to Jeremiah Jackson in 1794. Title to this tract became vested in Samuel Christ by deed dated September 7, 1882. Christ conveyed away portions of the tract during the succeeding three years, so that by 1886 he retained title to only 256.5 acres. It is this tract which became the subject of dispute in the instant action.

By deed dated December 3, 1888, Christ conveyed to John Findley a tract of land which, according to the deed, contained 125 acres. Following several intervening conveyances, the tract was ultimately conveyed, on June 21, 1957, to the Borough of Beech Creek; and the Borough, by deed dated October 15, 1973, conveyed the same to Beech Creek Municipal Authority. When the deed description was surveyed, it was learned that the tract described in the deed contained 152.3 acres.

The trial court found as a fact that the Authority mistakenly believed it had acquired title to all the land owned by Samuel Christ at the time of his deed to John Findley. In fact, however, title to a tract, which the trial court found to contain 104.2 acres, remained vested in Christ. This remaining land was not conveyed by Christ during his lifetime, but it was subsequently sold for nonpayment of taxes by the Treasurer of Centre County. John W. Hoover asserts title to this remaining tract through a deed from the Treasurer of Centre County.[1] He has paid current taxes on the tract. The usual means of access to this tract, however, was along a roadway which crossed the Authority's land.

1. This deed purported to convey to Hoover's predecessors in interest a tract containing 185 acres.

When Hoover was denied access via the road, he commenced an action to quiet title naming the Authority, inter alia, as defendant.

After trial without jury, the trial court found (1) that John Hoover had record title to the disputed tract of 104.2 acres; (2) that the Authority had failed to establish title to the 104.2 acre tract by adverse possession; and (3) that the remainder of the Christ tract had been conveyed in 1888 to John Findley and had become vested by subsequent conveyances in the Authority. Both parties appealed. The Authority contends on appeal that its evidence established title by adverse possession to the tract of 104.2 acres.[2] Hoover, on the other hand, contends that the land sold by Christ to Findley in 1888, and now owned by the Authority, contained only 125 acres and that the balance of Christ's lands, containing 131.5 acres, is owned by him.

The law pertaining to adverse possession was reviewed by this Court in *Flickinger v. Huston*, 291 Pa.Super. 4, 435 A.2d 190 (1981) as follows:

"It is well settled that he who asserts title by adverse possession must prove it affirmatively." *Robin v.*

**2.** In his cross-appeal, Hoover argues that the trial court erred in permitting the Authority to assert adverse possession as an affirmative defense. This argument is without merit. As a general rule, when a private or municipal body having the power of eminent domain enters upon the private lands of another and uses the land for its own purposes, the law presumes that it does so under its right of eminent domain and not as a willful trespasser whose trespass may grow into title. However, this presumption can be rebutted by evidence showing that the entry was made other than through the exercise of the power of eminent domain. See: *Ontelaunee Orchards, Inc. v. Rothermel,* 139 Pa.Super. 44, 52–53, 11 A.2d 543, 546–547 (1940).

In the instant case, the evidence showed that the Authority had entered upon and used the land in question under the belief that it had acquired title thereto when it purchased the adjoining parcel. This was sufficient to rebut the presumption that the Authority had acted pursuant to its power of eminent domain when it used the disputed parcel. See and compare: *Covert v. Pittsburg & Western Railway Co.,* 204 Pa. 341, 54 A. 170 (1903). The trial court, therefore, did not err in permitting the authority to raise the issue of adverse possession.

*Brown*, 308 Pa. 123, 129, 162 A. 161, 162 (1932). "[O]ne who claims title by adverse possession must prove that he had actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty-one years.... Each of these elements must exist, otherwise the possession will not confer title." *Conneaut Lake Park, Inc. v. Klingensmith*, 362 Pa. 592, 594–95, 66 A.2d 828, 829 (1949) (citations omitted). See also *Tioga Coal Co. v. Supermarkets General Corp.*, 289 Pa.Super. 344, 433 A.2d 483 (1981); *Smith v. Peterman*, 263 Pa.Super. 155, 397 A.2d 793 (1978); *Inn Le'Daerda, Inc. v. Davis*, 241 Pa.Super. 150, 360 A.2d 209 (1976). "An adverse possessor must intend to hold the land for himself, and that intention must be made manifest by his acts.... He must keep his flag flying and present a hostile front to all adverse pretensions." *Smith v. Peterman, supra*, 263 Pa.Super. at 161, 397 A.2d at 796 (quotations and citations omitted). In *Inn Le'Daerda, Inc. v. Davis, supra*, we noted that

> "[a] sporadic use of land, by one without title to it, will not operate to give him a title, no matter how often repeated.... It is true that residence is not necessary to make an adverse possession within the statute of limitation; the possession may be adverse by enclosing and cultivating the land ... but nothing short of an actual possession, permanently continued, will take away from the owner the possession which the law attaches to the legal title; temporary acts on the land, without an intention to seat and occupy it for residence and cultivation or other permanent use consistent with the nature of the property, are not the actual possession required.... Such occupation must be exclusive, and of such a character as compels the real owner to take notice of the possession of the disseisor...."

241 Pa.Super. at 159, 360 A.2d at 213 (quoting *Parks v. Pennsylvania Railroad Co.*, 301 Pa. 475, 481–82, 152 A. 682, 684 (1930) (citations omitted)). Thus, "only acts

signifying permanent occupation of the land and done continuously for a twenty-one year period will confer adverse possession." *Smith v. Peterman, supra* 263 Pa.Super., at 161, 397 A.2d at 796.

*Flickinger v. Huston, supra,* 291 Pa.Superior Ct. at 7–8, 435 A.2d at 192. See: *Klos v. Molenda,* 355 Pa.Super. 399, 402, 513 A.2d 490, 492 (1986); *Bigham v. Wenschhof,* 295 Pa.Super. 146, 149–150, 441 A.2d 391, 393 (1982).

In the instant case, the trial court found that the Authority and its predecessor in title had used the disputed parcel as a watershed since 1957. The court concluded, however, that the activities which the Authority had conducted on the land were insufficient to give notice that it was making an adverse claim. These activities consisted of the improvement and maintenance of the stream and a road thereon and, the removal of fallen trees and dead animals twice a year. The Authority also had patrolled the land from time to time and controlled access thereto by placing a fence across the road leading thereto.[3] This fence, however, was located on the tract to which the Authority held record title and not on the land to which it was claiming title by adverse possession.[4]

The Authority's activity on the Hoover tract was inadequate to acquire title by adverse possession, and the trial

3. In its initial opinion, the trial court found that this fence had been erected in 1967 and, therefore, had not been in existence for the necessary twenty-one year period. However, after the Authority contested this finding in its post-trial motions, the court amended its opinion to find that the fence had been in existence for over twenty-one years. Hoover argues that this was error. We disagree. The evidence produced at trial clearly showed that a cable gate had been placed across the roadway sometime prior to 1960 and that this gate had remained in place until 1967 when it was replaced with a more permanent fence. The trial court properly amended its findings to conform to this evidence.

4. There was also evidence that the Authority had constructed and maintained a reservoir and coffer dams as part of the watershed. However, the trial court found that these were located on an adjoining tract and not on the property here in dispute. These activities, therefore, can be of no benefit in establishing the Authority's claim of title by adverse possession.

court correctly so held. In *Darrah v. Kadison,* 55 Pa.Super. 335, 343 (1913), this Court said:

> To maintain an actual possession to woodland as such, it is necessary that the person entering take actual possession by residence or cultivation, of a part of the tract to which the woodland belongs. *Hole v. Rittenhouse,* 37 Pa. 116 [ (1860) ]; *Olewine v. Messmore,* 128 Pa. 470 [18 A. 495 (1889) ]. Actual possession may be taken by inclosing and cultivating, without residence or by residence without cultivation, under a bona fide claim where there is a designation of the boundaries with the ordinary use of the woodland. This possession accomplishes an ouster, and is entirely different from the occasional or temporary use of the land without an intention to permanently cultivate or reside thereon or use it in some other manner consistent with the condition of the property.

See also: *Robin v. Brown, supra* 308 Pa. at 126–127, 162 A. at 161–62; *Parks v. Pennsylvania R.R. Co., supra; Bigham v. Wenschhof, supra; Flickinger v. Huston, supra.*

In the instant case, the Authority's evidence did not show that it had taken actual, notorious and continuous possession of the Hoover tract for twenty-one years. It had not ousted the true owner from his land, and, indeed, its use of the land was so sporadic that it cannot be said that its flag could ever be seen flying over the same. By entering the land twice a year to clear it of dead trees and dead animals, the Authority did not take continuous possession thereof. Its activities were not "of such a character as [to] compel[ ] the real owner to take notice of the possession of the disseisor...." See: *Parks v. Pennsylvania R.R. Co., supra.*

The Authority argues, however, that by placing a fence across the road leading into the Hoover property so as to exclude strangers from entering the tract, it had effectively enclosed the property. This fence, together with the natural mountainous terrain, served to exclude strangers, it is

argued, and, when coupled with its use of the water from the stream and other activities, was sufficient to establish actual possession of the tract and to give notice to others that the Authority was claiming the tract as its own.

"The inclosure of land is undoubtedly evidence of possession, and, either of itself or in connection with other acts of ownership, may be sufficient on which to base an adverse claim. ...... Where inclosure is essential, or is relied upon as the evidence of possession, it must, to be effective, be complete and so open and notorious as to charge the owner with knowledge thereof. The inclosure should also be appropriate to fit the premises for the purposes to which they are adapted, or for which the occupant may desire to use them. ...... If the natural, together with the artificial, barriers used, are sufficient clearly to indicate dominion over the premises, and to give notoriety to the claim of possession, it is sufficient to put the statute of limitation in motion. The question in such cases is whether the inclosure, like other acts of possession, is sufficient to 'fly the flag' over the land, and put the true owner upon notice that his land is held under an adverse claim of ownership": 1 R.C.L., section 11, page 698.

"Where an inclosure is relied on to establish adverse possession, it must be of a substantial character, so as to be a protection against outside interference in adapting the premises to some suitable use. An inclosure of the land by felling trees and lapping them one upon another, or by the erection of a brush fence, or an inclosure by stakes, or the maintenance of a fence which is 'crooked, rickety and dilapidated,' or stretching around a twenty-five hundred acre tract one barbed wire nailed to trees and saplings and a few posts at about four feet from the ground, and under the barbed wire two strands of telephone wire, is not sufficient": 2 C.J., section 15, page 62. *Robin v. Brown, supra*, 308 Pa. at 127, 162 A. at 161–162. See: *Flickinger v. Huston, supra* 291 Pa.Super. at 10, 435

A.2d at 193; 2 C.J.S. *Adverse Possession* § 36 at 694–696 (1972); 3 Am.Jur.2d *Adverse Possession* § 31 (1986).

In the instant case, the only attempt made by the Authority to prevent entrance to the Hoover tract was by a fence erected across the road leading to the tract. It relied upon steep mountain ridges to prevent access from other directions. The trial court found, however, and we agree, that the mountain ridges were inadequate to give notice to the true owner that the Authority was claiming a title which was adverse and hostile to the owner. The fence across the road was located on land owned by the Authority, not on the Hoover tract. Except for this fence, the Authority did nothing to fly its flag over the land in such a way as to give notice that it was claiming an ownership interest therein. As such, there was neither a continuous nor hostile possession sufficient to support a claim of title. See and compare: *Dowdle v. Wheeler*, 76 Ark. 529, 89 S.W. 1002 (1905). To hold that adverse possession of wild and unoccupied land could be established by limited entry and possession as was present here would permit land to be taken without any notice to the owner or reason to believe that he had been disseized. This would have an unfortunate and destabilizing effect on titles to real estate, and we decline to go down that path. See and compare: *Bigham v. Wenschhof, supra* (no title by adverse possession where evidence showed that defendant's only activities on the land consisted of cutting timber and posting "no trespassing" signs during hunting season); *Flickinger v. Huston, supra* (evidence that plaintiffs had paid taxes; cleared part of land and planted trees thereon; erected a barbed wire fence around the land; cleared two streams running through the land; drained a swamp; erected a flagpole, outhouse and picnic tables and used the land periodically for picnics held insufficient to establish title by adverse possession); *Darrah v. Kadison, supra* (adverse possession of woodland not established by evidence that appellant had cut fence posts and timber from the property).

■ In Hoover's cross-appeal, it is contended that the trial court erred in finding that the Findley parcel, which had been conveyed to the Authority in 1973, consisted of 152.3 acres and that the remainder of the Christ property, which ultimately was conveyed to Hoover, consisted only of 104.2 acres. He contends that the Findley deed expressly stated that the parcel being conveyed consisted of 125 acres and that this description should control over the specific courses and distances, together with lines of adjoiner, contained in the deed description. This is especially so, Hoover argues, in light of the fact that the boundary description had not been prepared as the result of a survey. We disagree.

"Evidence of the acreage of land, especially where, as in this case, the number of acres is followed by the words 'more or less' has little weight as against specific boundaries and is in its nature an uncertain method of description and often a mere estimate. Where, however, ... a doubt exists as to the actual location of the boundary and the writing contains no words to definitely fix the line by either metes and bounds or monuments on the ground, evidence of acreage becomes a material factor in the determination of the intention of the parties...." *Dawson v. Coulter*, 262 Pa. 566, 570, 106 A. 187, 188 (1919). See: *Bosler v. Sun Oil Co.*, 325 Pa. 411, 415, 190 A. 718, 719 (1937); 12 P.L.E. *Deeds* § 73, at 56 (1985); 23 Am.Jur.2d *Deeds* § 56 (1983). In the instant case, the courses and distances, as well as the lines of adjoiner, stated in the Findley deed were sufficiently specific so that they could be located on the ground. The trial court did not err when it relied upon the deed description in preference to the amount of acreage recited in the deed.

Judgment affirmed.