J-A18012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOHN J. BOWSER, DAVID B. BOWSER, CARL E. BOWSER AND AMY B. WHERLEY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| GEORGE L. BEBOUT AND PEGGY A. BEBOUT, HIS WIFE, | |
| Appellees | No. 2191 MDA 2015 |

Appeal from the Judgment Entered December 8, 2015
In the Court of Common Pleas of Tioga County
Civil Division at No(s): 789 CV 2013

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 16, 2016**

Appellants, John J. Bowser, David B. Bowser, Carl E. Bowser, and Amy B. Wherley (hereinafter the "Bowsers"), appeal from the judgment entered in favor of Appellees, George L. Bebout and Peggy A. Bebout (hereinafter the "Bebouts"), on December 8, 2015, following a non-jury trial.  We affirm.

The trial court set forth the facts and procedural history of this case as follows:

> The Bowsers are the owners of a 392.04 acre piece of property located in Brookfield Township, Tioga County, Pennsylvania.  They acquired the property in 2012 from their father, Edward J. Bowser, Jr. and his wife, Hazel B. Bowser. Edward J. Bowser, Jr. and his then wife, Constance A. Bowser, acquired the property in 1978.  [Appellees, the Bebouts,] are the

_____

[*] Former Justice specially assigned to the Superior Court.

owners of a 264.13 acre piece of property also located in Brookfield Township, Tioga County, Pennsylvania. The Bebouts acquired the property in 2006 from Homer Bebout, George Bebout's brother. Homer Bebout acquired the property from his siblings and their spouses in 1978 after their father, Roger Bebout, passed away. Roger Bebout and his wife, Nina Bebout, originally acquired the property in 1955. The parties dispute ownership of approximately 32.13 acres of land (hereinafter "Disputed Parcel") that is described in each party's chain of title.

As the Disputed Parcel was conveyed to the Bebouts' predecessors in title first and then [later] conveyed to the Bowsers' predecessors in title, the Bebouts have senior or better record title to the Disputed Parcel. The Disputed Parcel was included in the Bowsers' chain of title due to a mistake in the survey done in 1951 by E.O. Mudge, R.S. The Bowsers claim ownership of the Disputed Parcel through the equitable doctrines of adverse possession and/or consentable boundary line. The Bowsers base their claim on their use of the Disputed Parcel through the years. This use includes putting up postings, updating blazes, consistently hunting on the Disputed Parcel, constructing a four-wheeler [trail], hiking, along with other recreational activities. The Bebouts used the Disputed Parcel for similar activities. The Bowsers were assessed and paid property taxes on the Disputed Parcel and enrolled it in the Clean and Green Program. The Bowsers believed they owned the Disputed Parcel. Neither party made any attempts to exclude the other party from the Disputed Parcel.

The Disputed Parcel is heavily wooded except for a rectangular square in the southern portion of the parcel [, which] the Bebouts have continuously cultivated by cutting hay, planting crops, and storing fire wood. The Disputed Parcel has never been surrounded by a fence or any other physical barrier. Neither party has erected any structures on the Disputed Parcel except for possibly a hunting stand.

The Bebouts first became aware that the Bowsers claimed an ownership interest in the Disputed Parcel when they had a survey performed in 2005 by Duane Wetmore. They did not pursue the matter at that time because they were involved in an unrelated adverse possession case and were advised to resolve that matter first.

The Bowsers initiated this action against the Bebouts on September 24, 2013[,] when they filed a complaint entitled Action to Quiet Title/Declaratory Action Judgment. The action included four counts: (1) declaratory judgment, (2) adverse possession, (3) consentable boundary line, and (4) quiet title. On October 29, 2013[,] the Bebouts filed an Answer, New Matter, and Counterclaim for their own declaratory judgment. The Bowsers then filed a reply to the Bebouts' [N]ew Matter and Counterclaim.

After the parties completed discovery, the [c]ourt held a non-jury trial on June 10, 2015. The parties then filed their respective post-trial briefs setting out proposed findings of fact and legal arguments. On September 11, 2015[,] the [c]ourt issued Findings of Fact and Discussion of the [L]aw and entered judgment in favor of the Bebouts and against the Bowsers. The Bowsers then filed a Post-Trial motion requesting the [c]ourt to enter an[] order in their favor. The Bebouts filed a reply brief opposing the request. On November [16], 2015[,] the [c]ourt issued an [o]rder denying the post-trial motions and further discussing the issue of consentable boundary lines.[1]

Trial Court Opinion (TCO), 1/22/16, at 1-3 (headings omitted).

The Bowsers filed a timely notice of appeal on December 14, 2015, contesting the judgment entered in favor of the Bebouts. The trial court directed the Bowsers to file a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), and they timely complied.

In their appellate brief, the Bowsers raise two issues for our review:

1. Did the [t]rial [c]ourt err in failing to find that a consentable boundary line existed when the evidence demonstrated that [the Bowsers] had established a

_____

[1] On December 7, 2015, the Bebouts filed a praecipe for the entry of judgment in favor of themselves and against the Bowsers in accordance with the trial court's order docketed on November 16, 2015.

boundary line made up of regularly maintained blazes and pins which was recognized and acquiesced to by [the Bebouts] for a period in excess of twenty-one years?

2. Did the [t]rial [c]ourt err in finding that the evidence of adverse possession was insufficient to confer quiet title to the disputed parcel in favor of [the Bowsers]?

Bowsers' Brief at 4 (suggested answers omitted).

Initially, we set forth our standard of review:

Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Lynn v. Pleasant Valley Country Club*, 54 A.3d 915, 919 (Pa. Super. 2012) (internal citations omitted).

On appeal, the Bowsers first challenge whether the trial court abused its discretion in determining that no consentable boundary line existed. *See* Bowsers' Brief at 14. Our Court has previously discussed the legal considerations underlying consentable boundaries:

The doctrine of consentable line is a rule of repose for the purpose of quieting title and discouraging confusing and vexatious litigation. There are two ways in which a boundary may be established through consentable line: (1) by dispute and compromise, or (2) by recognition and acquiescence. As the *en banc* court explained in *Niles* [*v. Fall Creek Hunting Club,*

- 4 -

*Inc.*, 545 A.2d 926, 930 (Pa. Super. 1988) (*en banc*)], the doctrine of consentable line is a separate and distinct theory from that of traditional adverse possession, although both involve a twenty-one year statute of limitation. Under the doctrine of consentable line,

> if adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for the period of time prescribed by the statute of limitations, they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one.
>
> …
>
> The requirements for establishing a binding consentable line by recognition and acquiescence are: (1) a finding that each party has claimed the land on his side of the line as his own; and (2) a finding that this occupation has occurred for the statutory period of twenty-one years. In such a situation, the parties need not have specifically consented to the location of the line. It must nevertheless appear that for the requisite twenty-one years a line was recognized and acquiesced in as a boundary by adjoining landowners.

*Plauchak v. Boiling*, 653 A.2d 671, 675-76 (Pa. Super. 1995) (internal citations and quotations omitted).

Here, the Bowsers claim that a consentable boundary line was established through recognition and acquiescence. Specifically, they contend that "it is clear that [the Bowsers'] posted and blazed line was an effective 'fence' in that it established a clear line between the properties that was recognized by all parties and acquiesced to by [the Bebouts'] for over thirty six years during which [the Bowsers] occupied, used, claimed, and

- 5 -

paid for the land up to the posted and blazed line."[2]  Bowsers' Brief at 18.
We disagree.

Our sister court, the Commonwealth Court, has observed that "[a] consentable line by recognition and acquiescence is typically established by a fence, hedgerow, tree line, or some other physical boundary *by which each party abides*."  ***Long Run Timber Co., Limited Partnership v. Department of Conservation and Natural Resources***, --A.3d--, No. 2313 C.D. 2015, 2016 WL 4533467 (Pa. Commw. filed Aug. 30, 2016) (emphasis added).  Furthermore, by definition, "[a] consentable boundary constitutes a clear[-]cut instance of adverse possession.  It is a judicial recognition of a boundary … that the parties have *consensually accepted* for a period of at least twenty-one years."  ***Lilly v. Markvan***, 763 A.2d 370, 371 n.1 (Pa. 2000) (internal citations omitted) (emphasis added).

Following the nonjury trial in the case *sub judice*, the trial judge found that "[t]he Disputed Parcel is a largely wooded area that *each* party used for hunting and recreation purposes.  *Each* party essentially used the area without interference from the other."  TCO at 7 (emphasis added).

_____

[2] We note that the trial court determined that "[t]he Bebouts' initial awareness of an actual boundary dispute did not occur until at or after the time of the survey … in 2005, nowhere near twenty-one years before this action."  TCO at 7.  This finding contradicts the Bowers' assertion that the boundary line was recognized and acquiesced to by the Bebouts for nearly thirty-six years.  Notwithstanding, we must accept the trial court's findings, as they are supported by competent evidence.  **See** N.T., 6/10/15, at 119-21; **see also Lynn**, 54 A.3d at 919.

Significantly, the trial court determined that *both* the Bowsers *and* the Bebouts used the Disputed Parcel. It found, based on testimony at trial, that "[t]he Bebout family has continuously used the Disputed Parcel for hunting, hiking, and riding four wheelers, as well as maintaining the semi-rectangular parcel along the southern portion as a field since they acquired title. The Bebouts' use of the Disputed [Parcel] has never been restricted, interrupted, infringed upon or limited in any manner by [the Bowsers] or anyone else."[3] **See** Findings of Fact, 9/11/15, ¶ 50. Given that the Bebouts continued to use the Disputed Parcel without limitation, the trial court correctly determined, based on competent evidence, that they did not recognize or abide by a boundary line. Thus, we conclude that no consentable boundary line exists.

Second, the Bowsers contend that the court erred in determining that they did not meet the burden of proving title by adverse possession. **See** Bowsers' Brief at 18. They argue that the trial court "erred in failing to find that the significant, permanent enclosure of signs, blazes, and pins combined with the regular use of the property, the construction of at least one tree stand and trails thereon, and open claiming of the property for tax

_____

[3] We note, however, that the Bebouts did not harvest timber on the Disputed Parcel because "they were aware ownership of the Parcel was in dispute[.]" **See** Findings of Fact, 9/11/15, ¶ 48.

purposes, did not rise to the level of possession required for adverse possession of woodland." Bowsers' Brief at 22. The trial court did not err.

This Court has explained that "[o]ne who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. Each of these elements must exist; otherwise, the possession will not confer title." *Recreation Land Corp. v. Hartzfeld*, 947 A.2d 771, 774 (Pa. Super. 2008) (quoting *Flannery v. Stump*, 786 A.2d 255, 258 (Pa. Super. 2001)). Generally, "actual possession of land means dominion over the property." *Bride v. Robwood Lodge*, 713 A.2d 109, 112 (Pa. Super. 1998). However, "[w]hat constitutes adverse possession depends, to a large extent, on the character of the premises." *Id.* When "the disputed parcel is undeveloped woodland, actual possession is established by either erecting a residence or by enclosing and cultivating the property." *Id.* at 112 (citing *Niles*, 545 at 930).

In *Flickinger v. Huston*, 435 A.2d 190 (Pa. Super. 1981), this Court concluded that evidence of adverse possession was insufficient where the person seeking title through adverse possession paid taxes on the property, cleared portions of the land, erected a flagpole and outhouse, and built a fence around the property, among other acts and investments. *Id.* at 192-93. In that case, in considering what constitutes enclosure, we explained that "one who relies on enclosure as proof of adverse possession must show that (the land) was so substantially and visibly fenced in and the fence was

so continuously and substantially maintained for at least twenty-one years as to amount to an assertion against the world of his exclusive private ownership of that area of the earth's surface." *Id.* at 193 (internal quotations and citations omitted). Moreover, we noted that the person seeking title through adverse possession "never lived on the tract, and there is no evidence that he cultivated the land continuously for twenty-one years." *Id.*

Here, the Bowsers agree that the Disputed Parcel is woodland. *See* Bowsers' Brief at 20. The trial court found, based on competent evidence, that the Bowsers did not erect a residence on the Disputed Parcel, did not enclose the Disputed Parcel with a fence or enclosure of any kind, and did not cultivate the land. TCO at 5-6. Accordingly, we agree with the trial court that the elements of adverse possession are not met in this case. Nevertheless, the Bowsers assert that it would be "grossly inequitable" to deprive them of the Disputed Parcel in light of their acts and purported investment in it. Bowsers' Brief at 13. However, as pointed out by the Bebouts, courts have determined that more extensive acts and investments, such as those discussed in *Flickinger*, did not legally suffice to establish possession for purposes of gaining title through adverse possession. *See* Bebouts' Brief at 16-17. Thus, we do not agree that a gross inequity would result. Finally, even if the Bowsers could satisfy the actual possession

element, they clearly would not satisfy all of the other requirements of adverse possession.[4]

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/2016

_____

[4] For instance, we would not characterize their use of the Disputed Parcel as exclusive, given that the Bebouts continued to use it without virtually any restriction, as discussed *supra*.